[No. 26760. Department One. November 8, 1937.]

THE STATE OF WASHINGTON, *Respondent,* v.
CLAUD H. RYAN, *Appellant.*[1]

[1]Reported in 73 P. (2d) 735.

*Warren Hardy,* for appellant.

*Jas. E. Sareault* and *Lloyd B. Dysart,* for respondent.

MAIN, J.—Claud H. Ryan and Walter Seelert, alias "Pinky" Mason, were charged by information with the crime of murder in the first degree. To the information, Ryan demurred, moved to strike, and moved to make more definite and certain, all of which were overruled. Ryan also moved for a change of venue to another county, on the ground of local prejudice, and this motion was likewise overruled. The case went to trial against Ryan alone, the other defendant not having been apprehended, and resulted in a verdict finding Ryan guilty of murder in the first degree and finding in favor of the death penalty. Ryan made a motion in arrest of judgment and also for a new trial, both of which motions were overruled. From the judgment

and sentence entered in accordance with the verdict of the jury, Ryan appeals.

The facts essential to be stated in order to present the questions for consideration may be summarized as follows: Emma Cartier, a widow, lived alone in her home, a two-story house, in South Bend, Pacific county, this state. Early in the morning of April 7, 1937, she was awakened by noises in the house and, upon investigation, found two men coming upstairs. She asked them what they wanted, and one of them said: "We want money, bonds, jewelry." Mrs. Cartier then said to them that she would give them her money if they would leave. Immediately thereafter, she handed them five twenty-dollar bills. After this, her mouth was taped and her hands were taped behind her back. One of the men then went to her desk and took therefrom coins, bond coupons, stock certificates, and other documents, as well as some jewelry. The men then left the house, and, as soon as Mrs. Cartier could free herself, she went to her neighbors to telephone the chief of police at South Bend, the telephone wire at her home having been cut. The chief of police telephoned the sheriff of Pacific county, who, in turn, telephoned the sheriffs' offices in a number of adjacent counties, one of which was in Lewis county.

In Lewis county, the message was received at Chehalis by S. R. Jackson, a deputy sheriff, the report indicating that the men probably were traveling on the road, or might be traveling on the road, leading from South Bend to Chehalis. Jackson called another deputy sheriff, J. D. Compton, and, having armed themselves, they proceeded west on the road leading from Chehalis to South Bend. After traveling about fifteen miles, it being then shortly after daylight and foggy, they saw two cars approaching. Thereupon, the officers pulled to the left side of the road. Jackson got out with a

flashlight and attempted to flag the cars, both of which went by without stopping. The officers then turned their car around and pursued the other two cars for a distance of about two miles, when they came upon them, and, sounding their siren, one of the cars, a Nash coupe, pulled off the pavement to the right side of the road and stopped; the other, a Ford sedan, proceeded on ahead.

The officers drove up beside the Nash coupe, the front end of their car being about opposite the left door of the Nash, with a space of about eight feet between the two. Jackson, who was on the right-hand side, got out, and, taking a step or two towards the Nash car, he was shot by a gun that had been equipped with a silencer. Jackson sank to the ground and died soon afterwards. Compton got out on the left side of the car he was driving, and the two men in the Nash coupe got out. Thereupon, a battle took place, in which, as Compton described it, he and Ryan, the appellant, shot it out for ten minutes. One was on one side of the officers' car, and the other on the other.

When Seelert came out of the Nash coupe, he went to the ground and remained there while Compton and Ryan were shooting at each other. This shooting kept up until Compton had exhausted all shots in his shotgun and in his automatic. In the meantime, he sustained two or three wounds. At this time, a truck approached from the rear, and Compton went back to meet it. As he went, two shots were fired at him. After Compton got back to the truck, Ryan and Seelert got into the officers' car and drove away.

Ryan was arrested April 13th, and soon thereafter the information was filed which charged murder in the first degree while engaged "in the commission of a

larceny and while engaged in withdrawing from the scene of a robbery and a burglary." Upon the trial, Ryan and Seelert were positively identified as being the two men that committed the robbery and burglary in South Bend.

The first question to be determined is whether the trial court erred in refusing the motion for a change of venue, which was supported and resisted by affidavits. Whether such a motion should be granted, rests in the discretion of the trial court and will not be disturbed by this court upon appeal, in the absence of a showing of abuse in the exercise of that discretion. The record made in favor of the change of venue is less persuasive than it has been in other cases where it has been held that the trial court did not abuse its discretion in refusing to change the venue. *State v. Straub,* 16 Wash. 111, 47 Pac. 227; *State v. Mahoney,* 120 Wash. 633, 208 Pac. 37. We are satisfied that there was no abuse of discretion in this case, and that the trial court correctly denied the motion for change of venue.

As to the information, the appellant says that it is defective because it did not set out therein the elements of larceny, robbery and burglary. But this was not necessary. The charge of withdrawing from the scene of a robbery and burglary was incidental to the primary charge of murder in the first degree, and such incidental matters need not be set out.

There is no distinction between this case and that of *State v. Fillpot,* 51 Wash. 223, 98 Pac. 659, where the rule stated was adopted. The appellant assails that case as unsound and the rule there stated as unjust. But with such contention, we do not agree. So far as we are informed, the case has been cited a number of times, not upon this particular question, it is true, but never at any time has the suggestion been made that

the rule of the case was not sound and just. Practically, the same position was taken in the case of *State v. Baker,* 150 Wash. 82, 272 Pac. 80, though the *Fillpot* case was not there referred to. There was no defect in the information.

Upon the trial, the appellant, on direct examination, was asked whether he had ever been convicted of a crime, and he answered that he had been convicted of manslaughter. On cross-examination, the matter was gone into further, and the record of the other conviction was offered and received in evidence. That record contained the information, the verdict of the jury, and the judgment and sentence. The objection went only to the information which charged murder in the first degree. Ryan was convicted of manslaughter. The information was a part of the record, and a certified copy of the record of the former conviction was properly admissible as a part of the cross-examination. *State v. Payne,* 6 Wash. 563, 34 Pac. 317; *State v. Steele,* 150 Wash. 466, 273 Pac. 742; *State v. Green,* 167 Wash. 266, 9 P. (2d) 62; Rem. Rev. Stat., § 2290 [P. C. § 8725].

Objection is made to the court's refusal to give certain requests, as well as to certain instructions given. One of the requests was to the effect that, since the robbery and burglary were committed in Pacific county and the killing took place in Lewis county where the trial was being held, the accused were not withdrawing from a robbery or burglary at the time of the shooting. But this request was properly refused. After the shooting took place, there were found in the Nash coupe some of the articles taken from Mrs. Cartier's residence. The distance from South Bend to the point in Lewis county where Jackson was killed was something like forty miles.

There is no exact measure of the lapse of time or the distance which an accused must travel from the scene

of a crime before it will be said that he is not withdrawing therefrom. Each case must depend upon its own facts and circumstances and, as a rule, presents a question for the jury. Time and distance must be considered in the light of present-day conditions, such as paved highways, high-powered automobiles, telephone connections, and radio. The case of *State v. Diebold*, 152 Wash. 68, 277 Pac. 394, does not attempt to state a definite rule.

The instruction requested was properly refused, as were the other requests.

As to the instructions given, complaint is made particularly to 20, 21, and 22. These instructions, under the evidence in this case, were all proper, and there was no error in giving them.

■ With reference to the charge of misconduct of counsel, this appeared: The deputy prosecuting attorney, during the opening argument, made the statement, referring to the two men accused, that: "Both of these men knew what it meant to shoot a human being." And there was more along the same line. Under the facts of this case, the argument was proper.

■ The prosecuting attorney, in opening his closing argument, said:

"This is the sixth defendant charged with murder that has come before me in the little more than two years that I have been serving as prosecuting attorney of this county—entirely too many."

This argument was objected to as improper, and the court promptly instructed the jury to disregard it. The statement objected to was improvident and unwise, but whatever error there was in making it was cured by the instruction of the court to the jury to disregard it.

There are some other minor claims of error which have been considered, and, in our opinion, they are without merit.

The appellant had a fair trial, which was free from error. The verdict of the jury was a just one.

The judgment will be affirmed.

STEINERT, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.

