[Nos. 83682-5; 84836-0.   En Banc.]
Argued February 8, 2011.     Decided June 7, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. THEODORE M. KOSEWICZ, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT A. BROWN, *Petitioner*.

684

*Janet G. Gemberling* (of *Janet Gemberling PS*), for petitioner Kosewicz.

*Dennis W. Morgan*, for petitioner Brown.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey, Deputy*, for respondent.

*Sheryl G. McCloud* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

*Seth A. Fine* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 FAIRHURST, J. — Before the court are two consolidated cases based on the same facts. Robert A. Brown and Theodore M. Kosewicz were both involved in the kidnapping, torture, and killing of Sebastian Esquibel. At trial, Brown was convicted of first degree kidnapping and felony murder with the predicate felony being the first degree kidnapping. At a separate trial, Kosewicz was convicted of first degree kidnapping and first degree aggravated murder with the aggravating factor being the first degree kidnapping. On appeal, both Brown's and Kosewicz's first degree kidnapping convictions were overturned because of a charging defect. The Court of Appeals did not overturn Brown's felony murder conviction or Kosewicz's aggravating factor verdict. Brown and Kosewicz argue that reversal of the first degree kidnapping convictions requires reversal of the felony murder and aggravating factor verdict that were based in part on the first degree kidnapping. We affirm Brown's felony murder conviction and Kosewicz's aggravating factor verdict.

## FACTS

¶2 On January 16, 2006, Sebastian Esquibel's body was found buried beneath a woodpile with his hands and feet

bound in jumper cables and a gunshot wound to the back of his head. The facts leading up to this murder were testified to as follows. Levoy Burnham was living in a fifth wheel trailer located on Brown's property. Burnham had given Esquibel $800 for a scheduled drug deal with Carlton Hritsco. Esquibel failed to deliver the drugs to Burnham or to return Burnham's money. Burnham brought Esquibel to his trailer, stripped him down to his underwear, and tied him up. Esquibel was intimidated and beaten over the course of two days by various people in an attempt to recover the missing money. Kosewicz and Brown were both involved at various times in this ordeal.

¶3 Brown admitted to detectives that while he was at the trailer, he guarded Esquibel with a gun, struck him in the head, and yelled at him. He also admitted checking on Esquibel's claimed connections with a local gang and advised Burnham and the other captors that Esquibel, in fact, had no such connections. Brown eventually distanced himself from the situation, although he continued to monitor it from his house.

¶4 Burnham's wife, Shannon Burnham, testified that Kosewicz arrived at the trailer for a short time. Ms. Burnham testified that Kosewicz interrogated Esquibel about the money and joined in the punching and kicking of Esquibel. Kosewicz consistently disputed this testimony, claiming that he never harmed Esquibel. Kosewicz left the trailer with Esquibel still restrained inside.

¶5 The next day, Burnham and two others took Esquibel by van to various places where Esquibel unsuccessfully tried to get the money. Brown did not go in the van with Esquibel, but Burnham picked up Kosewicz on the way. At some point, Esquibel's captors lost patience and drove the van far out into the countryside. Burnham and Kosewicz exited the van with Esquibel and shot him in the head. Whether Kosewicz actually pulled the trigger is not clear, but Kosewicz, Burnham, and Esquibel walked away from the vehicle, a shot was fired, and only Kosewicz and Burnham returned.

¶6 The State charged Brown with several crimes, only two of which are relevant in this appeal—felony murder and first degree kidnapping. The felony murder charge was predicated on the felony of kidnapping in the first degree. The information expressly limited Brown's first degree kidnapping charge by specifying that Brown, as an actor or accomplice, kidnapped Esquibel "with intent to inflict bodily harm."[1] Clerk's Papers (CP) (Brown) at 148. However, Brown's felony murder charge did not include the same limitation; the information alleged that Brown, as an actor or accomplice, murdered Esquibel in the course of "First Degree Kidnapping." CP (Brown) at 148. At trial, Brown's defense centered on disputing his accomplice liability. Although Brown admitted to detectives that he had hit Esquibel, yelled at him, and held him at gunpoint, his attorney summed up Brown's defense as follows:

> The things you are going to hear from the evidence today are that Mr. Brown was not part of this group. That is so very, very important. I hope I can have your detailed attention to that, to watch his individual actions in comparison with the group. The evidence is going to show that the group is Mr. Levoy Burnham, Carlton Hritsco, Theodore Kosewicz, Shannon Burnham to some degree, Amber Johnson, David Collins. This is the group. The evidence will show that these are the people that actually acted as accomplices, that aided in some way toward this goal

---

[1] Kidnapping in the first degree is a multiple means crime that may be proved in five alternative ways:

(1) A person is guilty of kidnapping in the first degree if he intentionally abducts another person with intent:
  (a) To hold him for ransom or reward, or as a shield or hostage; or
  (b) To facilitate commission of any felony or flight thereafter; or
  (c) To inflict bodily injury on him; or
  (d) To inflict extreme mental distress on him or a third person; or
  (e) To interfere with the performance of any governmental function.
(2) Kidnapping in the first degree is a class A felony.

RCW 9A.40.020. The State may charge a defendant with one or all of the alternative means outlined in the statute. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). If the information charges an alternative means crime, and lists only one alternative, it is error to instruct the jury that it may consider any of the other alternative means for the purposes of that charge. *Id.*

that the state is here to prove today, the goal of kidnapping, the goal of murder. Their actions you will see. Mr. Brown's actions on the outside. The evidence is going to show that.

3 Verbatim Report of Proceedings (VRP) (Brown) at 383.

¶7 In a separate trial, the State also charged Kosewicz with several crimes, including premeditated murder in the first degree with aggravating circumstances and kidnapping in the first degree. The aggravating circumstance was that the murder was committed during the first degree kidnapping. Similar to Brown, the State expressly limited the charge of kidnapping in the first degree, whether as an actor or accomplice, to kidnapping "with intent to inflict bodily injury." CP (Kosewicz) at 36. However, in the charge of premeditated murder in the first degree with aggravating circumstances, the State did not include the same limitation, stating only that the murder was alleged to have occurred in the course of "kidnapping in the first degree." CP (Kosewicz) at 36. Kosewicz's defense also centered on disputing his accomplice liability. Kosewicz admitted to detectives that he knew Burnham wanted to scare Esquibel but that he had no knowledge of any intent to physically harm Esquibel. At trial, Kosewicz clarified that the purpose for his presence in the van was "[j]ust to have [Burnham's] back, to make sure that nobody gets [Burnham] while he's trying to get [Esquibel] back." VRP (Kosewicz) (Jan. 28, 2008) at 35-36. Kosewicz disputed the prosecution's assertion that he intended to scare Esquibel, or that he had ever told detectives that was his intent. Kosewicz consistently maintained throughout the trial that he neither physically harmed Esquibel nor knew of anyone else's intent to kill Esquibel. Thus, Kosewicz's defense appears to be that his mere presence was insufficient for him to be found guilty of kidnapping and murder.

¶8 The jury instructions in both Brown's and Kosewicz's trial defined kidnapping in the first degree as "[a] person commits the crime of kidnapping in the first degree when he or she intentionally abducts another person with intent to

inflict bodily injury on the person or to inflict extreme mental distress on that person or on a third person." CP (Brown) at 358; CP (Kosewicz) at 97. Neither Brown nor Kosewicz objected to this instruction on the ground that it included the alternative means of intent to inflict extreme mental distress in addition to intent to inflict bodily injury. Brown was convicted of kidnapping in the first degree and felony murder, with the predicate felony being kidnapping in the first degree. Kosewicz was convicted of kidnapping in the first degree and premeditated murder in the first degree. In connection with the premeditated murder charge, the jury returned a special verdict finding the aggravating circumstance that Kosewicz's murder was committed in the course of kidnapping in the first degree.

¶9 In unpublished opinions, the Court of Appeals reversed both Brown's and Kosewicz's kidnapping convictions. *State v. Kosewicz*, noted at 150 Wn. App. 1055, 2009 WL 1765941, 2009 Wash. App. LEXIS 1542; *State v. Brown*, noted at 156 Wn. App. 1035, 2010 WL 2403353, 2010 Wash. App. LEXIS 1292. The Court of Appeals held that the trial court's instructions violated Brown's and Kosewicz's right to adequate notice of the charges against them because the instructions made it possible for the jury to convict Brown and Kosewicz of kidnapping in the first degree under an alternative means that was not included in their informations. *Kosewicz*, 2009 WL 1765941, at *4-5, 2009 Wash. App. LEXIS 1542, at *2; *Brown*, 2010 WL 2403353, at *2-3, 2010 Wash. App. LEXIS 1292, at *6-7. Despite reversing the kidnapping convictions, the Court of Appeals upheld Brown's felony murder conviction and Kosewicz's premeditated murder with aggravating circumstances conviction. *Kosewicz*, 2009 WL 1765941, at *5, 2009 Wash. App. LEXIS 1542, at *6; *Brown*, 2010 WL 2403353, at *5, 2010 Wash. App. LEXIS 1292, at *12. Brown and Kosewicz appealed, and we consolidated their cases and granted review solely on the issues of whether the validity of the felony murder and aggravated murder convictions was affected by the reversal of the

kidnapping convictions. *State v. Brown*, 170 Wn.2d 1002, 245 P.3d 226 (2010); *State v. Kosewicz*, 168 Wn.2d 1026, 230 P.3d 1060 (2010).[2]

## ANALYSIS

¶10 Because both Brown's and Kosewicz's first degree kidnapping convictions were reversed on the ground that the defendants were provided insufficient notice, we must decide whether that inadequate notice permeated the informations, requiring reversal of Brown's felony murder conviction and Kosewicz's aggravating factor verdict. The accused in a criminal case has a constitutional right to notice of the alleged crime the State intends to prove. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI. Notice is provided through the information. CrR 2.1(a)(1). The State must include all essential statutory and court imposed elements of an alleged crime in the information. *State v. Kjorsvik*, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). The purpose of this essential elements rule is to sufficiently apprise the defendant of the charges against them so that he or she may prepare a defense. *Id.* at 101.

¶11 Regarding Brown's felony murder charge, the State had the burden to prove that Brown "commit[ed] . . . kidnapping in the first or second degree, and in the course of or in furtherance of such crime or in immediate flight therefrom, [Brown], or another participant, cause[d] the death of a person other than one of the participants." RCW 9A.32.030(1)(c). While a predicate felony, such as kidnapping in the first degree, is an element of this felony murder charge, the defendant is not actually charged with the

---

[2] Kosewicz argues in his supplemental brief to this court that his aggravating factor of kidnapping in the first degree must be reversed because the jury instructions permitted the jury to find this sentencing enhancement under a theory of accomplice liability rather than direct liability. Kosewicz argues that this is a violation of his rights under article I, section 14 of the Washington Constitution ("Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."). We did not accept review of this issue and decline to address this argument here. *See* RAP 2.3(e).

underlying crime. *State v. Whitfield*, 129 Wash. 134, 139, 224 P. 559 (1924). The predicate felony merely substitutes for the mental state the State is otherwise required to prove. *State v. Craig*, 82 Wn.2d 777, 781, 514 P.2d 151 (1973). Therefore, Washington courts have long held that the underlying elements of the predicate felony are not essential elements of felony murder and do not have to be included in the information. *State v. Hartz*, 65 Wn. App. 351, 354, 828 P.2d 618 (1992) (citing *State v. Anderson*, 10 Wn.2d 167, 180, 116 P.2d 346 (1941); *State v. Ryan*, 192 Wash. 160, 164-65, 73 P.2d 735 (1937); *State v. Fillpot*, 51 Wash. 223, 228, 98 P. 659 (1908)). Because the elements of the predicate felony need not be pleaded, the information also does not need to specify the alternative means of committing a crime on which the State will ultimately rely. *Id.* at 354-55.

¶12 Brown's information included all of the required essential elements of his felony murder charge. The information charged Brown with "caus[ing] the death of SEBASTIAN L. ESQUIBEL" as either a principal or an accomplice, "while committing or attempting to commit the crime of First Degree Kidnapping, and in the course of and in furtherance of said crime and in immediate flight therefrom." CP (Brown) at 148. Unlike Brown's stand-alone charge of kidnapping in the first degree, the State did not enumerate a particular alternative means of committing kidnapping for the purpose of felony murder. Therefore, all alternative means of proving kidnapping in the first degree as a predicate felony could potentially be argued by the State. Viewing Brown's felony murder charge alone, the State pleaded all essential elements of the crime for the purpose of the constitutional notice requirements.

¶13 Regarding Kosewicz's aggravating factor verdict, his information alleged that Kosewicz, as an actor or accomplice, murdered Esquibel "in the course of, in furtherance of or immediate flight from the crime of First Degree Kidnapping." CP (Kosewicz) at 132. We recently held that an aggravated factor is not the functional equivalent of an

essential element and, thus, need not be charged in the information to provide adequate notice to the defendant. *State v. Siers*, 174 Wn.2d 269, 274 P.3d 358 (2012). The holding in *Siers* adopted the lead opinion's decision in *State v. Powell*, 167 Wn.2d 672, 223 P.3d 493 (2009) (plurality opinion), that " '[d]ue process is satisfied when the defendant receives sufficient notice from the State to prepare a defense against the aggravating circumstances that the State will seek to prove in order to support an exceptional sentence.' " *Siers*, 174 Wn.2d at 278 (quoting *Powell*, 167 Wn.2d at 682). Due process was satisfied in *Siers* where the State provided notice to the defendant prior to trial that it intended to seek a good Samaritan aggravator on an assault charge. *Id*. This court has never held that where the aggravating factor requires proof of a separate offense, the elements or alternative means of proof of the separate offense must also be pleaded. Requiring the State to plead the elements and alternative means of an underlying offense in an aggravating factor would be incongruous with our recognition above that the underlying elements and alternative means of a predicate felony need not be pleaded in the information.

¶14 Kosewicz's information pleaded the elements of premeditated murder in the first degree and identified that "the murder was committed in the course of, in furtherance of or in immediate flight from, the crime of Kidnapping in the First Degree." CP (Kosewicz) at 36. The State gave notice of its intent to prove the kidnapping aggravating factor and included all the essential elements of premeditated murder in the first degree charge. Therefore, viewing the first degree murder charge alone, Brown cannot argue that his notice was constitutionally inadequate for failure to plead the essential elements of the charged crime.

¶15 Ordinarily, finding that all the essential elements of Brown's felony murder charge and Kosewicz's first degree murder charge were included in the information would conclude our analysis, and both convictions would be af-

firmed. However, this case presents unique circumstances. Brown's and Kosewicz's informations are unusual because the source of the allegedly inadequate notice arose from the State limiting the stand-alone kidnapping charge to the alternative means of intent to inflict bodily injury, while placing no such limitation on the first degree kidnapping allegation when it was included as a predicate felony or aggravating factor. Because only one kidnapping occurred, Brown and Kosewicz argue that they only had notice that the State intended to prove kidnapping with the intent to inflict bodily harm for *all charged crimes* where kidnapping in the first degree was at issue. Recognizing the imprecise nature of the State's charging document,[3] we proceed with our notice analysis, although the result is the same.

¶16 A defendant may bring a constitutional challenge to the information at any time before final judgment. *City of Seattle v. Jordan*, 134 Wash. 30, 34, 235 P. 6 (1925). However, when a party challenges the information for the first time on appeal, we apply the liberal construction rule. *Kjorsvik*, 117 Wn.2d at 105-08. The liberal construction rule is a two pronged test that has been described as follows:

> When a defendant challenges the information for the first time on appeal, we determine if the elements "appear in any form, or by fair construction can they be found, in the charging document." [*Kjorsvik*, 117 Wn.2d] at 105. We read the information as a whole, *according to common sense and including facts that are implied*, to see if it "reasonably apprise[s] an accused of the elements of the crime charged." *Id*. at 109. If it does, the defendant may prevail only if he can show that the unartful charging language actually prejudiced him. *Id*. at 106.

---

[3] In some sense, it is surprising that the parties failed to correct this issue sooner. It is unclear why the State would choose to construct its charges against Kosewicz and Brown in such an unartful way. The State could have enumerated the alternative means that it would attempt to prove in all counts where first degree kidnapping was at issue. Alternatively, it is surprising that neither Brown nor Kosewicz objected to two separate jury instructions enumerating the allegedly uncharged alternative means. This issue could have been easily prevented by either the State taking greater care in crafting the information or the defendants raising a timely objection or moving for a bill of particulars to clarify the information.

*State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010) (second alteration in original). "This 2-prong standard of review strikes a balance: on the one hand it discourages the defense from postponing a challenge to the charge knowing the charging document is flawed; on the other hand, it insures that the State will have given fair notice of the charge to the defendant." *Kjorsvik*, 117 Wn.2d at 106.

██ ██ ¶17 Under the first prong of the liberal construction rule we inquire whether the allegedly missing alternative means can be found by fair construction in the whole of the charging document, thus reasonably apprising the defendants of the elements of the crime charged. *Nonog*, 169 Wn.2d at 227. Brown's felony murder charge did not limit the alternative means to intent to inflict bodily injury. The felony murder charge simply stated that Brown, "while committing or attempting to commit the crime of *First Degree Kidnapping*, and in the course of and in furtherance of said crime and in immediate flight therefrom, did cause the death of SEBASTIAN L. ESQUIBEL." CP (Brown) at 124 (emphasis added). Therefore, reading Brown's information as a whole, Brown was reasonably apprised that both intent to inflict bodily injury and intent to inflict emotional distress were at issue.

¶18 Similarly, Kosewicz was reasonably apprised that intent to inflict extreme mental distress was an alternative means to proving kidnapping in the first degree as an aggravating factor to premeditated murder. His premeditated murder charge itself stated that the murder was "committed in the course of, in furtherance of or in immediate flight from, the crime of Kidnapping in the First degree." CP (Kosewicz) at 36. No limitation on kidnapping in the first degree was included in this charge that would restrict the prosecution's case to proving only intent to inflict bodily harm. Thus, by fair construction, Kosewicz was reasonably appraised that the State could seek to prove kidnapping with intent to inflict extreme mental distress as an aggravating factor.

¶19 Turning to the second prong of the liberal construction rule, we inquire whether the information's unartful language prejudiced the defendants. Our analysis in *Kjorsvik* is instructive here. In *Kjorsvik*, we held that the defendant had not been prejudiced by a charging document that failed to enumerate the common law element of robbery—" 'intent to steal.' " 117 Wn.2d at 111 n.37. In reaching this holding, the court noted that at trial the defendant did not make any argument that he lacked the intent to steal and that the jury instructions, which were not objected to at trial, clearly enumerated the missing common law intent element. *Id.*

¶20 Brown's and Kosewicz's prejudice claim should be dismissed for similar reasons as the defendant in *Kjorsvik*. Neither Brown's nor Kosewicz's defense depended on drawing a distinction between their intent to inflict bodily harm or their intent to inflict extreme mental distress. Brown confessed to the police that he struck Esquibel during the kidnapping and that his associates tortured and intended to scare Esquibel into returning the money. Brown only disputed that he committed or otherwise aided in the kidnapping and was not present during the planning or initiation of these crimes. Brown essentially argues that he did nothing more than fail to come to the aid of the victim and thus lacks accomplice liability.

¶21 As for Kosewicz, on cross-examination he disputed the prosecution's assertion that he intended to physically harm or scare Esquibel. In his opening statement, Kosewicz's attorney drew no distinction between Kosewicz's intent to cause bodily harm versus his intent to cause extreme mental distress. Instead, he effectively disputed both intents by arguing simply that Kosewicz was not an accomplice to the kidnapping or murder. Both Brown's and Kosewicz's defenses suggest that they were not prejudiced by a lack of notice because both defenses centered on them not being accomplices, not on whether they intended bodily harm versus extreme mental distress.

¶22 Moreover, neither Brown nor Kosewicz objected to the jury instructions on the ground that the definition of kidnapping in the first degree expressly permitted the jury to convict if the jury found the defendants had the intent to inflict extreme mental distress. In fact, both sets of jury instructions stressed both alternative means for proving kidnapping in the first degree in two separate jury instructions. At Kosewicz's trial, the State even moved to amend the to convict instruction for first degree kidnapping (instruction 14) to add language implicating accomplice liability. Even when this specific instruction was discussed in open court, Kosewicz declined to object to the unamended portion of the instruction that expressly included intent to inflict extreme mental distress as an available alternative means of proof. Given the failure to object to these jury instructions, and the nature of both defendants' cases turning on accomplice liability rather than their particular intent, we hold that neither Brown nor Kosewicz have demonstrated actual prejudice from the unartful language in their instructions. Since we conclude that Brown's felony murder charge and Kosewicz's aggravated premeditated murder charge were sufficient to give the defendants reasonable notice of the essential elements of the charges against them, and that they suffered no prejudice from the manner in which the crimes were charged, there is no reversible error and both convictions are affirmed.

¶23 The concurrence/dissent concedes that our recent decision in *Siers* requires affirming Kosewicz's conviction. Concurrence/dissent at 705-06. It also admits our holding today with respect to Brown is consistent with our older cases. *Id.* at 699. Nevertheless, the concurrence/dissent goes on to quarrel that our jurisprudence on this issue is a "series of technicalities" and complains there is no "intellectually satisfying reason to treat crimes that are elements of another crime differently for notice purposes than crimes that are charged." *Id.* at 699, 700. The concurrence/dissent would ignore a long line of our cases tracing back to 1908.

Those cases explicitly distinguished between the essential elements necessary for a charged crime and those necessary for a predicate crime. *See Fillpot*, 51 Wash. at 228.

¶24 We are unwilling to ignore, or dismiss as outdated, our case law on this issue. The defendant is not actually charged with the predicate crime and therefore the notice standard is different. Our decision today also harmonizes our jurisprudence by acknowledging this distinction where an aggravating factor involves a separate offense. In our view, it is not a mere technicality to hold that Brown and Kosewicz received adequate constitutional notice of the charges against them. This holding faithfully applies established and reasoned case law to the facts at hand under the proper standard of review.

## CONCLUSION

¶25 Brown's and Kosewicz's informations provided sufficient notice of the charges against them. We affirm Brown's conviction for felony murder. We affirm Kosewicz's first degree kidnapping aggravating factor verdict and his conviction for premeditated murder in the first degree with aggravating circumstances.

MADSEN, C.J.; OWENS and J.M. JOHNSON, JJ.; and ALEXANDER, J. PRO TEM., concur.

¶26 CHAMBERS, J. (concurring in part and dissenting in part) — "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him." CONST. art. I, § 22. The central question in this case is whether the State has to give adequate notice of the acts a person is accused of committing that will result in punishment. Ordinarily, our state constitution provides greater protections than the federal constitution. The United States Supreme Court has established a new floor of constitutional protection with the rule

that any fact (other than criminal history) that will increase punishment beyond the statutory maximum must be pleaded and proved to a jury beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. 296, 301-02, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Our jurisprudence has long distinguished between—and established different standards for—elements, enhancements, aggravators, and predicate crimes. We must reexamine the reasons for these distinctions in light of *Blakely* and its progeny. The majority hews to very old case law and fails to reexamine the rationales behind those cases in light of the current trend to require greater notice of facts that will increase punishment. While the majority's opinion is consistent with some of our older cases, it reduces our notice jurisprudence to a series of technicalities without any consistent underlying rationale. Although I find the majority's resolution of both of these consolidated cases unsatisfying, I concur with the result in Theodore Kosewicz's case because it is dictated by a recent opinion of this court. *State v. Siers*, 174 Wn.2d 269, 274 P.3d 358 (2012). However, I would reverse Robert Brown's conviction and, therefore, I dissent from the majority in his case.

A. Essential Elements

¶27 When the State charges a person with a crime, that person is entitled to notice of exactly what crime he or she is accused of committing. *See State v. Kjorsvik*, 117 Wn.2d 93, 98, 812 P.2d 86 (1991); CONST. art. I, § 22. That means in the charging document the State must charge all the "essential elements" of a crime. *Kjorsvik*, 117 Wn.2d at 101-02. This "essential elements" rule "requires that the defendant be apprised of the elements of the crime charged and the conduct of the defendant which is alleged to have constituted that crime." *Id.* at 98 (quoting *State v. Leach*, 113 Wn.2d 679, 688, 782 P.2d 552 (1989)). If the State fails to do so, the defendant's constitutional rights of notice and

due process are violated and a new trial is required. *See id.* at 97, 107-08. But, according to the majority's reasoning, if another crime appears in the information as an element of the charged crime, the defendant is *presumed to know* the essential elements of the other crime. Majority at 692-93. In other words, the majority acknowledges that not informing the defendant of the elements of a crime is a notice violation so fundamental it requires a new trial to remedy. *Id.* at 691-92. But then, with what I think is inconsistent reasoning, the majority concludes that if another crime is one of the elements of the charged crime, the defendant is presumed to know not only all the elements of that other crime, but also which specific elements the State intends to try. *Id.*

¶28 I cannot find an intellectually satisfying reason to treat crimes that are elements of another crime differently for notice purposes than crimes that are charged. The State, of course, "must prove the elements of the predicate felony to prove the offense of felony murder." *State v. Gamble*, 154 Wn.2d 457, 466, 114 P.3d 646 (2005); *see also State v. Carter*, 154 Wn.2d 71, 80, 109 P.3d 823 (2005) ("in order for a person to be found guilty of felony murder, the State must prove that he or she committed or attempted to commit a predicate felony"); *State v. Wanrow*, 91 Wn.2d 301, 311, 588 P.2d 1320 (1978) ("The intent necessary to prove the felony-murder is the intent necessary to prove the underlying felony. That intent must be proved by the State as a necessary element of the crime, and the question whether it was present is presented to the jury."[4]). These cases make

---

[4] A close reading of this statement from *Wanrow* actually disposes of the central question in this case because it inescapably states that the elements of the underlying predicate felony are "necessary element[s]" of felony murder. *Wanrow*, 91 Wn.2d at 311. *Wanrow* is arguably distinguishable because it concerned the elements as they must be proved to a jury rather than elements as they must be charged in the information. *Id.* However, an element that is essential (or "necessary") for purposes of proof to a jury beyond a reasonable doubt logically is also essential for purposes of notifying the defendant what crime she is accused of committing. If the point of notice in this context is to prepare a defense, the defendant should be apprised of what the State is going to try to prove to the jury.

clear the jury must be instructed on and the State must actually prove each element of a predicate felony in felony murder. It follows that to prepare an adequate defense the defendant must be notified of what elements the State intends to prove. *See State v. Royse*, 66 Wn.2d 552, 556, 403 P.2d 838 (1965) (expressly connecting what must be alleged with what must be proved).

### B. Robert Brown's Felony Murder Conviction

¶29 The majority cites a single Court of Appeals case for its remarkable proposition that when a crime becomes an element of another crime, it takes on mystical properties that notify the defendant of all its elements. Majority at 692 (citing *State v. Hartz*, 65 Wn. App. 351, 354, 828 P.2d 618 (1992)). That case in turn cites three cases from this court. *Id.* But the cases from this court to which the Court of Appeals cites are all over 70 years old, trace back to a single decision in 1908, and rely on notice principles long abandoned by this court.

¶30 This court first held elements of the predicate felony in a felony murder charge need not appear in the information in *State v. Fillpot*, 51 Wash. 223, 228, 98 P. 659 (1908). In *Fillpot*, the court concluded that the specific elements of the predicate felony need not be laid out in a felony murder charge because "[t]he [predicate] crimes of robbery and burglary . . . are elsewhere defined in the criminal code" and they therefore have "a well-defined and legal meaning." *Id.* It was sufficient, according to the court, to merely state in the information the terms "robbery" or "burglary" as used in the felony murder statute because it met the *statutory* requirement that a person of ordinary understanding could know what was intended by going and looking up their elements elsewhere in the code. *Id.*

¶31 In 1908, criminal law was far less complex than today. The modern notice requirement of the essential elements rule is not merely statutory but is "based on constitutional law and court rule." *Kjorsvik*, 117 Wn.2d at

97 (citing CONST. art. I, § 22 (amend. 10); U.S. CONST. amend. VI; CrR 2.1(b), *recodified as* CrR 2.1(a)(1)).[5] We have expressly rejected the idea that defendants must search for the rules or regulations they are accused of violating. *Id.* at 101 (citing *State v. Jeske*, 87 Wn.2d 760, 765, 558 P.2d 162 (1976)). Rather, both our state and federal constitutions require that "*all* essential elements of an alleged crime must be included in the charging document in order to afford the accused notice of the nature of the allegations so that a defense can be properly prepared." *Id.* at 101-02. Given these developments in our case law, the majority's determination that the State in a felony murder charge need not notify a defendant of which elements of the predicate felony it intends to try is not reconcilable with modern due process and notice jurisprudence.

¶32 The other cases cited by the majority are similarly a few steps behind the past several decades of case law. In the 1941 case, *State v. Anderson*, 10 Wn.2d 167, 180, 116 P.2d 346 (1941),[6] the most recent case cited by the majority, the court offered the following rationale for the majority's rule:

> Nor is [the information] defective in not stating in specific detail the facts and elements of the burglary or robbery upon which the crime of murder in the first degree is charged . . . . The state's case was necessarily based upon and built around the confession and admissions of appellant. We cannot conceive of any fact which the state, by way of bill of particulars or by way of making the information more definite and certain, could have furnished him that was not already locked up in his own breast.

In other words, when a charge is based on the admissions of the defendant, the State need not provide proper notice in charging because the defendant has all the notice he needs "locked up in his own breast." *Id.* But that is not the

---

[5] Fundamental due process concerns also underpin the rule. *Leach*, 113 Wn.2d at 690.

[6] The third case from this court relied on by the majority simply cites *Fillpot* without further analysis. *State v. Ryan*, 192 Wash. 160, 164-65, 73 P.2d 735 (1937).

standard by which we judge the adequacy of the information today. To say no notice is needed because the defendant himself knows what he did is antithetical to modern principles of fairness and due process. Nor are those principles satisfied by a charge that lists an underlying crime as an essential element of another crime but fails to inform the defendant which elements of that underlying crime the State intends to try.

¶33 Federal cases applying the same constitutional principles conflict with the majority's analysis. The Ninth Circuit Court of Appeals specifically addressed the issue of notifying the defendant of the elements of a predicate felony while interpreting Washington law in the context of second degree felony murder predicated on a second degree assault charge:

> [The defendant] was presented with the dilemma of preparing a defense to the second degree assault upon which the felony murder was founded without knowing whether the State would proceed on the theory that the second degree assault was founded on the "intent to injure" under [former RCW 9.11-.020(1) (1909)[7]] or "to enable or assist himself ... to commit any crime" under [former RCW 9.11.020(2)]. To allow the State to charge in such nebulous terms and proceed to trial on either of these theories would in itself be violative of the principle of fundamental fairness on which due process of law is bottomed. The practical inquiry as to the sufficiency of the information . . . reveals that on this basis alone, [the defendant] would not have received the requisite notice to adequately prepare his defense.

*Kreck v. Spalding*, 721 F.2d 1229, 1233 (9th Cir. 1983) (third alteration in original) (citation omitted). The fact that this analysis is dicta renders it no less potent an indictment of the rule in the cases relied on by the majority.

¶34 Other jurisdictions agree with the Ninth Circuit. The Supreme Court of Hawai'i expressly disapproved of

---

[7] Title 9 RCW was in effect during the 1973 trial in this case. It was repealed effective July 1, 1976.

*Hartz* and held that "where one offense requires the actual commission of a second underlying offense, in order to sufficiently charge the offense, it is incumbent on the State to allege the essential elements of the underlying offense; identification of the offense by name or statutory reference will not suffice." *State v. Israel*, 78 Haw. 66, 75, 890 P.2d 303 (1995). And the Illinois Appellate Court has likewise held that "where the commission of an underlying offense is a requisite for the commission of a second offense, the information must also contain the elements of the underlying offense." *People v. Miles*, 96 Ill. App. 3d 721, 725, 422 N.E.2d 5, 52 Ill. Dec. 304 (1981).

¶35 The unfairness of a rule contrary to that endorsed by the Ninth Circuit and other jurisdictions becomes evident when applied in a context outside that of felony murder. In fact, this court soundly rejected the same arguments made by the majority in the context of second degree assault. In 1965, well after *Fillpot* and its progeny, we held that information charging second degree assault with the intent to commit a felony was insufficient. *Royse*, 66 Wn.2d at 557. There, like in *Fillpot*, the State argued that "it was sufficient in an indictment for a statutory crime to charge the crime in the language of the statute." *Id*. at 556-57. We found that was not enough because "the statute, in this instance, does not define the crime with certainty, and the rule only applies where the statute does define the offense which it creates." *Id*. at 557. More importantly, we continued:

> [T]he information must state the acts constituting the offense in ordinary and concise language, not the name of the offense, but the statement of the acts constituting the offense is just as important and essential as the other requirements of the information, such as the title of the action and the names of the parties.

*Id*. Thus this court did not reverse the defendant's conviction only because the State had not named the felony that formed the basis for the second degree assault conviction. It

expressly required "not the name of the offense, but the statement of the acts constituting the offense," *despite the fact* that the "offense" was not actually charged but was a predicate to the second degree assault charge. *Id.*

¶36 Felony murder is not, for this purpose, meaningfully different from a second degree assault charge predicated on the intent to commit a felony. The defendant need not be charged with the underlying felony but the felony is itself an element of second degree assault. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.11, at 467 (3d ed. 2008). It is incongruous to hold that the name of the offense is insufficient in the context of second degree assault but sufficient in the context of felony murder. And it is difficult to understand how a felony murder charge that refers to the predicate felony only as "robbery," "burglary," or "first degree kidnapping" comports with our requirement that the charging information " 'allege facts supporting every element of the offense.' " *Kjorsvik*, 117 Wn.2d at 98 (emphasis omitted) (quoting *Leach*, 113 Wn.2d at 689).

## C. Theodore Kosewicz's Aggravating Factor Verdict

¶37 Because the same analysis no longer applies to Kosewicz's aggravating factor verdict, I must concur in the majority's resolution of this case as to Kosewicz. Five justices of this court recently held that aggravating factors must appear in the charging documents in order to give adequate notice to the defendant. *State v. Powell*, 167 Wn.2d 672, 689-90, 695, 223 P.3d 493 (2009) (plurality opinion). Under *Powell*, the situation in Kosewicz's case is analogous to Brown's felony murder case. In both instances, another underlying crime is an essential element, or functional equivalent of an element, of the primary crime charged, and the State should thus be required to declare in the information the elements of an aggravating crime it intends to prove. While I agree with the analysis of the five justices concurring and dissenting in *Powell*, this court has

recently overturned *Powell*'s requirement that aggravating factors appear in the charging documents to provide notice to the defendant. *Siers*, 174 Wn.2d at 276. Therefore, I concur with the majority that under the law as it now stands Kosewicz's conviction should be affirmed.

D. Conclusion

¶38 In my view, in order to prepare a defense, the defendant must be informed of the essential elements of all crimes that appear in the information, whether or not they are elements of another crime. The majority relies on antiquated authority for the proposition that the defendant is presumed to know the elements of predicate crimes. I believe the majority's holding may not survive federal scrutiny. I urge prosecutors to act with an abundance of caution and to specify the elements of all crimes that appear in the information. I respectfully dissent from the majority's holding as to Robert Brown. I would reverse his conviction and remand for a new trial.

C. JOHNSON, STEPHENS, and WIGGINS, JJ., concur with CHAMBERS, J.