IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77012-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAGANA, MODI MAMA, | ) | |
| DOB: 01/10/1969, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 25, 2019 |

SCHINDLER, J. — A jury convicted Modi Mama Jagana of two counts of identity theft in the second degree. Jagana claims (1) his conviction on an uncharged crime violated due process, (2) his attorney provided ineffective assistance of counsel, and (3) insufficient evidence supports the jury verdict. Because neither the record nor case law supports his arguments, we affirm.

## FACTS

Fatou Dibba planned to open a hair salon and beauty supply store in Lynnwood. In mid-2012, Dibba hired Modi Mama Jagana as a contractor to do the necessary renovations. Dibba and Jagana did not enter into a written contract. Dibba gave Jagana a key to the store so he could work when she was not there.

During the fall of 2012, Dibba traveled to Amsterdam for several weeks. Jagana finished working on the renovation project while Dibba was away. When Dibba returned, city inspectors told her the construction work did not meet code requirements. Dibba hired a different contractor to redo the construction work so she could obtain city approval and open the store.

In January 2013, Dibba discovered her Bank of America checking account was nearly overdrawn. Dibba accessed her account online and found that Jagana had cashed two of her checks without her permission. Dibba immediately contacted the bank and the police.

Lynnwood Police Detective Douglas Teachworth interviewed Jagana. Jagana admitted cashing the checks but insisted the checks were payment for the construction work. Dibba told Detective Teachworth that she had already paid Jagana for his work. Detective Teachworth tried to call Jagana again but the phone was disconnected.

The State charged Jagana by amended information with one count of forgery in violation of RCW 9A.60.020(1)(b) and two counts of identity theft in the second degree in violation of RCW 9.35.020(1) and (3).[1] Jagana pleaded not guilty.

Dibba testified that she agreed to pay Jagana $3,000 for the construction work. Dibba also paid for Jagana's license and bond, as well as supplies. Dibba testified she paid Jagana half at the beginning and the other half when she returned from Amsterdam. Dibba said she paid Jagana $200 in addition to what she owed him.

---

[1] At the start of trial, a second amended information was filed for the sole purpose of correcting a scrivener's error regarding one of the check numbers.

2

Dibba testified she paid Jagana in cash. Dibba said she often carried two or three blank checks with her in her purse. Dibba said Jagana had access to her purse when she was at the store. Dibba denied issuing a check to Jagana for any purpose.

Jagana testified the original estimate for the work was $7,500. Jagana said he agreed to reduce the price to $4,000 because Dibba paid for his license and bond, as well as supplies. Jagana testified Dibba gave him two signed personal checks before leaving for Amsterdam—one check made out for $650 and the other for $750. Jagana said the checks were blank except for Dibba's signature and the dollar amount. Jagana said he completed the signed checks by filling in his name, the date, and the dollar amount "in letters." On the "memo line" of one of the checks, Jagana wrote "[p]ayment for work."

Jagana said Dibba asked him not to cash the checks right away. Jagana testified Dibba said she would call him from Amsterdam when the money was available in her account. Jagana said he told Dibba he would need to cash the checks if she did not pay him. Jagana said he attempted to call Dibba after she returned from Amsterdam but she blocked his number.

Jagana testified he went to Africa to visit family sometime in November or December 2012. After he returned, Jagana decided to cash Dibba's checks. Jagana said he needed money for labor costs he paid while waiting for Dibba to pay him. Jagana opened a new bank account in his name at the bank where he had a mortgage account. Jagana cashed the $650 check, taking $600 in cash and depositing the other $50 in the account. Two days later, Jagana attempted to deposit the other check using mobile deposit but the transaction did not go through.

Jagana admitted Dibba never gave him permission to cash the checks. Jagana said he cashed the checks because Dibba never paid him for his work.

The jury found Jagana not guilty of forgery. The jury convicted Jagana of two counts of identity theft in the second degree.

## ANALYSIS

### Due Process

For the first time on appeal, Jagana contends the State violated his right to due process by seeking to convict him on conduct that was not charged in the information.

A defendant has a constitutional right to be informed of the nature and cause of the charges against him. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. An information is constitutionally sufficient only if all essential elements of a crime are included in the document. State v. Porter, 186 Wn.2d 85, 89, 375 P.3d 664 (2016). " 'An essential element is one whose specification is necessary to establish the very illegality of the behavior charged.' " State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013)[2] (quoting State v. Ward, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). "The purpose of this essential elements rule is to sufficiently apprise the defendant of the charges against them so that he or she may prepare a defense." State v. Kosewicz, 174 Wn.2d 683, 691, 278 P.3d 184 (2012).

A person commits the crime of identity theft in the second degree when with intent to commit "any crime," he or she knowingly obtains, possesses, uses, or transfers a means of identification or financial information of another person and obtains money or anything else that is $1,500 or less in value. RCW 9.35.020(1), (3).

---

[2] Internal quotation marks omitted.

4

The charging document plainly and accurately informed Jagana of all essential elements of the charged crime. The amended information alleged Jagana committed two counts of identity theft in the second degree as follows:

> Count 2: SECOND DEGREE IDENTITY THEFT committed as follows: That the defendant, on or about the 12th day of January, 2013, did knowingly obtain, possess, use and transfer a means of identification and financial information of a person, to wit: check #116 belonging to the Bank of America account of Fatou Dibba, with the intent to commit, aid, and abet a crime, to-wit: Forgery; proscribed by RCW 9.35.020 (1) and (3), a felony.

> Count 3: SECOND DEGREE IDENTITY THEFT committed as follows: That the defendant, on or about the 12th day of January, 2013, did knowingly obtain, possess, use and transfer a means of identification and financial information of a person, to wit: check #115 belonging to the Bank of America account of Fatou Dibba, with the intent to commit, aid, and abet a crime, to-wit: Forgery; proscribed by RCW 9.35.020 (1) and (3), a felony.

Jagana contends that contrary to the language of the amended information that states he intended to commit forgery, the prosecutor argued during closing argument that he acted with the intent to commit theft. The record does not support Jagana's assertion that the State sought to convict him on an alternative theory that he committed identity theft with the intent to commit theft.

Identity theft is not an alternative means crime. State v. Fedorov, 181 Wn. App. 187, 197-198, 324 P.3d 784 (2014). "It is reversible error to try a defendant under an uncharged statutory alternative because it violates the defendant's right to notice of the crime charged." State v. Doogan, 82 Wn. App. 185, 188, 917 P.2d 155 (1996). But the State is not required to specify in the information that Jagana intended to commit the crime of forgery. It is sufficient for the information to allege Jagana committed identity theft with the intent to commit "any crime." RCW 9.35.020(1). Surplus language in an

5

information may be disregarded. State v. Tvedt, 153 Wn.2d 705, 718, 107 P.3d 728 (2005). The to-convict jury instructions on identity theft in the second degree correctly state that the State must prove beyond a reasonable doubt that Jagana knowingly obtained, possessed, or transferred or used the checks with the intent to commit "any crime." The to-convict jury instructions state:

> To convict the defendant of the crime of Identity Theft in the Second Degree, . . . each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about the 12th day of January, 2013, the defendant knowingly obtained, possessed, or transferred, or used a means of identification or financial information of another person — Check #116 [and #115]
> (2) That the defendant did so with the intent to commit any crime; and
> (3) That the defendant knew that the means of identification or financial information belonged to another person; and
> (4) That any of these acts occurred in [the] State of Washington.
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

The prosecutor did not use the term "theft" at any point during closing or rebuttal argument. During closing argument, the prosecutor addressed the elements in the to-convict jury instructions and described how the State's evidence applied to each charge. In regard to the identity theft charges, the prosecutor argued:

> [O]n or about the 12th day of January, 2013, the defendant knowingly obtained, possessed, or transferred, or used as a means of identification or financial information of another person, check 116. It is uncontested the defendant used check 116 on January 12th of 2013. He possessed it. Had it in his hand. He opened up the account and he cashed it. Transferred it. Done. The defendant did so with the intent to commit a crime. Yeah. He intended to take her money.

Jagana contends that by using the phrase, "He intended to take her money," the prosecutor invited the jury to convict him of identity theft on the uncharged theory of intent to commit theft. We disagree. In the context of the entire argument, it is apparent that the prosecutor argued Jagana knowingly obtained, possessed, and transferred Dibba's check 116 to obtain money from her bank account. The prosecutor's argument is entirely consistent with the charging document and the jury instructions. The information provided sufficient notice for Jagana to defend against the charges.

Ineffective Assistance of Counsel

Jagana contends his attorney provided ineffective assistance of counsel by proposing the to-convict identity theft jury instructions. The trial court used the proposed to-convict instructions to instruct the jury.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To establish ineffective assistance of counsel, Jagana must show (1) his counsel's performance was deficient and (2) the deficient performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

To prevail on a claim of ineffective assistance of counsel, the defendant must overcome a strong presumption that defense counsel was effective. Strickland, 466 U.S. at 689; McFarland, 127 Wn.2d at 335. Failure to meet either prong of the two-part test for ineffective assistance of counsel ends the inquiry. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Jagana cannot establish ineffective assistance of

7

counsel. The to-convict jury instructions that defense counsel proposed accurately state the law. The instructions mirror the language of the identity theft statute and 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 131.06, at 616 (4th ed. 2016).

Nevertheless, Jagana argues his attorney should not have proposed instructions that stated he acted with the intent to "commit any crime" but instead, should have proposed instructions that used the surplusage language in the amended information. The surplusage language in the amended information states Jagana acted with the intent to commit "a crime, to-wit: Forgery." But as noted, unnecessary language that is included in an information is not an element of the crime that either must be proved or included in the jury instructions. Tvedt, 153 Wn.2d at 718.

State v. Morales, 174 Wn. App. 370, 298 P.3d 791 (2013), is distinguishable. The State charged the defendant Morales with two counts of felony harassment of Yanett Farias in violation of RCW 9A.46.020. Morales, 174 Wn. App. at 375-76. However, the to-convict jury instruction stated Morales placed " 'Trinidad Diaz &/or Yanett Farias in reasonable fear that the threat to kill would be carried out.' " Morales, 174 Wn. App. at 376.[3] In closing argument, the prosecutor referred to the jury instruction to argue the testimony of Diaz established he was fearful Morales would carry out the threat to kill. Morales, 174 Wn. App. at 383. We held the court erred by instructing the jury on an uncharged crime and the error was not harmless. Morales, 174 Wn. App. at 383-84. Unlike in Morales, here, the jury instructions correctly state the law.

---

[3] Emphasis in original.

Sufficiency of the Evidence

Jagana argues insufficient evidence supports the identity theft in the second degree jury convictions. Due process requires the State to prove all essential elements of the charged crime beyond a reasonable doubt. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed 2d 368 (1970). In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). A challenge to the sufficiency of the evidence admits the truth and all reasonable inferences from the State's evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the trier of fact on issues of witness credibility. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014).

Jagana contends the State failed to prove he intended to commit "any crime" as required by RCW 9.35.020(1). Viewing the evidence and logical inferences in the light most favorable to the State, the evidence demonstrates Jagana's intent to commit "any crime" and supports the jury convictions for identity theft in the second degree.

Dibba testified Jagana did not work on the construction of the store after October 2012 and she paid him only in cash. Dibba said she never wrote Jagana a check or gave him a blank check for any purpose. Dibba also testified that she often left a few checks in her purse and Jagana had access to her purse, as well as access to business documents containing her actual signature. Dibba said she did not give Jagana

9

permission to cash the checks. Dibba testified the two checks Jagana cashed were not in her handwriting.

Jagana admitted he wrote his name and date on the checks, spelled out the dollar amounts, and wrote "[p]ayment for work" in the memo lines. Jagana admitted Dibba never gave him permission to cash the checks. The evidence shows Jagana knowingly possessed the checks and deprived Dibba of the funds in her account. Sufficient evidence supports the jury finding the intent to commit a crime.

We affirm the jury conviction of two counts of identity theft in the second degree.

WE CONCUR: