# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37253-7-III |
| Respondent, | ) | |
| | ) | ORDER: (1) DENYING MOTION |
| v. | ) | FOR RECONSIDERATION AND |
| | ) | (2) GRANTING MOTION TO |
| DALE A. TENINTY, | ) | PUBLISH IN PART |
| | ) | |
| Appellant. | ) | |

THE COURT has considered appellant Dale Teninty's motion for reconsideration of our May 11, 2021, opinion; the State's motion to publish in part our May 11, 2021, opinion; the response of the appellant to the motion to publish; and the record and file herein.

IT IS ORDERED that the motion for reconsideration is denied.

IT IS FURTHER ORDERED that the motion to publish in part is granted. This court's May 11, 2021, opinion is withdrawn and a new opinion is filed herewith.

PANEL: Judges Pennell, Fearing and Staab.

FOR THE COURT:

_____
REBECCA L. PENNELL
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37253-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| DALE A. TENINTY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Dale Teninty appeals his convictions for two counts of child molestation. He argues the trial court erroneously granted the State's motion to strike a prospective juror for cause based on actual bias. According to Mr. Teninty, the State's motion was improper because the type of bias attributed to the juror is something that might be disparately shared by people of color. Mr. Teninty does not claim that the struck juror was a person of color. He instead claims that certain types of bias cannot serve as the basis for striking a juror for cause because doing so will result in a diminished pool of racial and ethnic minorities who are eligible to serve as jurors.

We disagree with Mr. Teninty's reasoning. Both the prosecution and defense have the right to fair and impartial jurors. A juror who cannot fulfill the charge of impartiality may be stricken for cause regardless of the nature of the juror's bias. Even if the juror's bias is one that might be disproportionately shared by racial or ethnic minorities, the right to an impartial jury must prevail and the juror may be stricken for cause. Mr. Teninty's convictions are affirmed.

## FACTS

When A.E. was seven years old, she disclosed to her cousin and then her mother that she had been molested by Dale Teninty, a man who had previously lived in her family's home. Prior to this disclosure, the mother and the cousin had warned A.E. about bad touches and told her that they had been the victims of molestation when they were young. A.E.'s mother contacted the police and A.E. participated in two forensic interviews. Mr. Teninty was subsequently charged with one count of attempted first degree child molestation and three counts of completed first degree child molestation. The case went to trial.

During voir dire, juror 34 disclosed he had a friend who had been accused of child molestation. Juror 34 explained he had testified as a character witness for the friend and that the events occurred roughly a decade or so ago, when the friend was in his 30s and

No. 37253-7-III
*State v. Teninty*

the child was 14 or 15. When the court asked juror 34 if he could be impartial, the

following colloquy occurred:

> JUROR NO. 34: I think—well, yeah. Basically, I think that you're going to have to prove to me that he did it before I'm going to. Other than that, yeah.
> THE COURT: Okay. So you said that with a fair amount of conviction.
> JUROR NO. 34: Well, yeah.
> THE COURT: So did you think your friend was wrongfully charged?
> JUROR NO. 34: I do.
> THE COURT: All right.
> JUROR NO. 34: But I will tell you that he walked out of there, the jury was 11 in favor of him and one in favor of guilty. So my opinion is the fellow spent several months in jail for nothing, you know, what I mean.
> THE COURT: Yes, I do. That's helpful.
> So do you think given that experience and particularly what you just highlighted about you[r] friend having spent undue time in jail, that you would be inclined to hold the State to a higher burden?
> JUROR NO. 34: I'm not sure what you mean by that. I don't think that—well, I think if there's proof and I believed that somebody did something, well, then I'm going to say guilty. But if I don't fully believe that they did something, I would not say guilty. So I don't think that—I don't think it would—I don't think it would change my opinion, you know what I mean.
> THE COURT: So let me ask you a little different[ly]. Do you think you can be unbiased?
> JUROR NO. 34: I do, actually.
> THE COURT: And impartial?
> JUROR NO. 34: Yeah, I do.

2 Report of Proceedings (RP) (Oct. 15, 2019) at 257-59. The prosecutor then questioned

him further.

3

[THE PROSECUTOR]: Fair to say you think your friend was treated unfairly?

JUROR NO. 34: Well, given—yeah, pretty much.

[THE PROSECUTOR]: Do you think that was—who would be treated unfairly by, law enforcement or the courts or what specific part of it?

JUROR NO. 34: I wouldn't say that law enforcement or the courts. Basically, it was the person accusing my friend. It's just that laws are what they are and he had to go where he had to go until matters were resolved, so to speak.

. . . .

[THE PROSECUTOR]: So do you think that anything from that experience or those emotions could impact [how you view] our case here in court?

JUROR NO. 34: You know, I guess I can't really say because I don't know the circumstances. But I guess if I feel it's along the same lines, I could be persuaded by the situation.

. . . .

JUROR NO. 34: I mean, like it was the same circumstances and somebody was saying this and this and I knew that it wasn't true—basically I can tell you what the deal was in the end is the younger gal was trying to date an older guy like in his late 20s, okay. So he said no way, you can't do that because he was with her mother, you know. He was the father figure for three or four years at this point. And basically this was her way to get rid of him so she could have what she wanted. And that's the way the jury viewed it at the end. So if it's the same kind of thing, I could see where I could be persuaded to see it.

[THE PROSECUTOR]: Do you think some of that background information and things that you saw in your own experience could impact you?

JUROR NO. 34: It's possible.

[THE PROSECUTOR]: Okay.

JUROR NO. 34: I guess it could because I don't know what went on here, so I have no idea.

[THE PROSECUTOR]: Okay. So would it be fair to say if things did start maybe making you think of your experience or started bringing some of that back, that that could affect your ability to be fair in our case?

JUROR NO. 34: It is possible, yeah, now that you mention it like that. Yeah, I guess it is possible.

*Id*. at 259-62. The court subsequently granted the prosecutor's motion to strike juror 34 for cause over Mr. Teninty's objection.

At the conclusion of trial, the jury convicted Mr. Teninty of two counts of first degree child molestation. Mr. Teninty timely appeals his judgment and sentence.

ANALYSIS

*Excusal of juror for cause*

Mr. Teninty contends the trial court committed structural error by dismissing juror 34 for actual bias. According to Mr. Teninty, the prosecutor's justifications for striking juror 34 were discriminatory. Mr. Teninty does not allege juror 34 was a person of color or that the prosecutor had actual animus toward juror 34. Instead, Mr. Teninty makes a disparate impact argument. He points out that people of color are disproportionately targeted by the criminal justice system. Given this circumstance, striking a juror for cause because the juror has a friend who faced charges similar to the defendant's has a discriminatory impact and therefore deprives the defendant of his right to a fair and impartial jury.

5

Mr. Teninty's arguments miss the mark because he confuses the analysis

applicable to for-cause challenges and peremptory challenges.[1]

A for-cause challenge is one based on a juror's individual qualifications for service.

RCW 4.44.150; CrR 6.4(c). A juror's actual bias can serve as a reason for a for-cause

challenge. RCW 4.44.170(2). But in order to grant a for-cause challenge based on actual

bias, the court must be satisfied that the juror cannot disregard preexisting opinions and try

the case impartially. RCW 4.44.190.

Peremptory challenges may be applied to prospective jurors who have not been

excluded for cause. CrR 6.4(e)(2). "A peremptory challenge is an objection to a juror

for which there is no reason given, but upon which the court shall exclude the juror."

CrR 6.4(e)(1). "However, the Equal Protection Clause limits the exercise of peremptory

challenges by prohibiting their use to exclude otherwise qualified and unbiased jurors

based upon their race." *State v. Vreen*, 99 Wn. App. 662, 666, 994 P.2d 905 (2000). The

current process for determining whether a peremptory strike violates equal protection is

---

[1] We also question the factual premise of Mr. Teninty's argument. While people of color are woefully over-represented in the criminal justice system, it is not clear that people of color make up a disproportionate number of individuals charged with child molestation.

6

set forth in GR 37.[2] Under the terms of the rule, a party or the court may object to the use

of a peremptory challenge on the basis of improper bias. When a GR 37 objection is

made, the party exercising the peremptory challenge must articulate reasons for the

challenge. GR 37(d). The court must then make a determination as to whether "an

objective observer could view race or ethnicity as a factor in the use of the peremptory

challenge . . . ." GR 37(e). "If the court determines that an objective observer could view

race or ethnicity as a factor in the use of the peremptory challenge, then the peremptory

challenge shall be denied." *Id*. One of the considerations a court should make in assessing

the discriminatory nature of a peremptory strike is whether the reason for a strike "might

be disproportionately associated with a race or ethnicity." GR 37(g)(iv). Presumptively

invalid reasons for peremptory strikes include a juror's "prior contact with law

enforcement officers," "expressing a distrust of law enforcement," and "having a close

relationship with people who have been stopped, arrested, or convicted of a crime."

GR 37(h)(i)-(iii).

The prosecution challenged juror 34 for cause; it was not a peremptory challenge.

As such, the only issue before the court was whether juror 34 was laboring under actual

---

[2] GR 37 was adopted in 2018 and was effective at the time of Mr. Teninty's
2019 trial.

bias. The right to an impartial jury applies to both the prosecution and defense. *Hayes v. Missouri*, 120 U.S. 68, 70-71, 7 S. Ct. 350, 30 L. Ed. 578 (1887) (explaining impartiality requires that "scales are to be evenly held" between criminal defendant and State); *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005) (noting "*both* the defendant *and the State* have a right to an impartial jury"). Safeguarding jury impartiality means a juror suffering from actual bias may be excluded from service, regardless of race or the reasons for the bias. Mr. Teninty correctly observes that the judiciary must be careful to enforce rules in an inclusive way and that does not disproportionately exclude racial and ethnic minorities from jury service. Judges should proceed with caution when a party seeks to remove a racial or ethnic minority from the jury panel. But if the party requesting a strike proves the proposed juror holds a bias that impairs the juror's ability to fairly and impartially decide the case, the strike should be sustained regardless of the juror's race or disparate impact concerns.

The primary authority cited by Mr. Teninty is the plurality opinion of *State v. Pierce*, 195 Wn.2d 230, 455 P.3d 647 (2020). *Pierce* had to do with the State interjecting bias into the jury pool by eliciting an irrelevant conversation about the death penalty. It had nothing to do with a for-cause challenge based on an individual juror's expression of bias, specifically tied to the facts of the case. *Pierce* does not undermine the rule that both

8

parties to a case have a right to exercise challenges for cause when faced with a prospective juror who is unable to impartially adjudicate a case based on a preexisting bias.

Mr. Teninty also claims that, regardless of his disparate impact argument, the trial court erred when it granted the State's motion to strike juror 34 for cause. To prevail on this argument, Mr. Teninty must show the trial court committed a "manifest abuse of discretion." *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991). This is a difficult standard. When it comes to assessing a trial court's decision on a challenge for cause, we must keep in mind that the trial court has the advantage of observing a juror's demeanor and is therefore "in the best position to determine a juror's ability to be fair and impartial." *Id*. at 839. Even where reasonable minds can differ, we will uphold a trial court's decision so long as it falls within the broad range of reasonable decisions. *See id*.

The trial court here had a tenable basis for granting the State's motion to strike juror 34 for cause. During his colloquy with the court and prosecutor, juror 34 admitted that if the circumstances of Mr. Teninty's case caused him to start thinking about his friend's case, his ability to be fair would be impaired. Juror 34's concerns were about the veracity of the complaining witness in the friend's case. This circumstance was similar to the defense raised by Mr. Teninty in his case. While it would have been impossible

9

for the court to delve into juror 34's mind and assess whether the specifics of his prior experience would be triggered by the evidence to be elicited in Mr. Teninty's trial, the trial court did have an adequate basis for concluding juror 34 met the criteria of actual bias. *See* RCW 4.44.190. The trial court therefore properly exercised its discretion in granting the motion to strike. CrR 6.4(c).[3]

The judgment of conviction is affirmed.

The panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder having no precedential value, shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## *Admission of child hearsay statements*

Prior to trial, the State sought to admit out-of-court statements made by A.E. to her mother, her cousin, and the forensic investigator under RCW 9A.44.120. The trial court held an evidentiary hearing and ruled the hearsay statements admissible. The court issued written findings in support of its decision, consistent with the criteria set by the Supreme

---

[3] As previously noted, there is no allegation juror 34 was a racial or ethnic minority. Thus, it would not appear the trial court was faced with discerning whether the reason for the strike was a pretext for purposeful discrimination.

Court in *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984). The court found

that all the applicable factors weighed in favor of admitting A.E.'s statements.

On appeal, Mr. Teninty argues the hearsay statements should not have been

admitted because they were not reliable. Mr. Teninty does not assign error to any of the

trial court's factual findings. Instead, Mr. Teninty broadly claims A.E.'s memories of

abuse were irreparably tainted by her mother and cousin, both of whom warned A.E.

about their own histories of abuse.

Mr. Teninty's child hearsay claim fails. While a mother's warning to her child

about the dangers of sexual assault might provide fodder for cross-examination, it

defies common sense to think that the mere provision of warnings will render a child

incompetent to testify about her own experiences of victimization. In any event, there are

no facts in the record suggesting the specific information relayed by A.E.'s mother and

cousin were impermissibly suggestive. There is no indication that A.E.'s mother or cousin

pressured A.E. to come forward against Mr. Teninty. Nor was there any indication that

A.E.'s mother or cousin provided A.E. with details about their own experiences with

abuse, let alone details similar to the ones alleged by A.E. Finally, Mr. Teninty has not

challenged any of the trial court's findings, including the finding that A.E. had an

11

independent recollection of the events in question.[4] Given the record at hand, we have no basis for disturbing the trial court's child hearsay ruling. *See State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).

*Same criminal conduct*

Mr. Teninty contends the trial court erred by counting his two convictions separately because they involved the same intent, victim, and location. The State counters that the court correctly separated the offenses as they occurred at different times and in different parts of the victim's home. Specifically, one count pertained to an incident on a green chair located on the porch of A.E.'s residence. The other count pertained to an incident inside the home on what was referred to as "'Papa's' chair." Clerk's Papers at 225. We agree with the State's assessment.

Two or more crimes can be treated as the "same criminal conduct" for sentencing purposes if they "require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). The burden of proving same criminal conduct falls on the defense and we review a trial court's same criminal conduct

---

[4] The court found, "A.E. retained an independent recollection of the timeframe and events in question." Clerk's Papers at 226. Although this finding was mislabeled as a conclusion of law, it is properly "treated as a finding of fact." *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007).

decision for abuse of discretion. *State v. Graciano*, 176 Wn.2d 531, 537-39, 295 P.3d 219 (2013). We will only find an abuse of discretion when the record supports "only one conclusion on whether the crimes constitute the 'same criminal conduct.'" *Id*. at 538.

As noted by the State, Mr. Teninty's same criminal conduct argument fails because he cannot show the crimes against A.E. occurred at the same time and place. According to A.E., the abuse happened on different occasions in different locations of her home. The trial court properly denied Mr. Teninty's request to treat the two convictions as the same criminal conduct.

## CONCLUSION

The judgment of conviction is affirmed.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____, J.                    _____
Fearing, J.                    Staab, J.