# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,

          Respondent,

      v.

YOURHIGHNESS JEREMIAH BOLAR,

          Appellant.

No. 86712-1-I

ORDER DENYING MOTION FOR
RECONSIDERATION AND
WITHDRAWING AND
SUBSTITUTING OPINION

The appellant, Yourhighness Bolar, has filed a motion for reconsideration of the opinion filed on December 1, 2025. The court has determined that the motion should be denied, but the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on December 1, 2025 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

_Feldman, J._

_Smith, J._

_Fearing, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

          Respondent,

        v.

YOURHIGHNESS JEREMIAH BOLAR,

          Appellant.

No. 86712-1-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Yourhighness Jeremiah Bolar appeals his conviction and sentence for felony murder in the second degree. He argues: (1) the trial court erred in striking a juror for cause; (2) the trial court abused its discretion in excluding character evidence about the victim; (3) the trial court committed multiple instructional errors; (4) he was denied effective assistance of counsel when his attorney failed to suggest a specific response to a jury question; (5) his right to be present was violated when the trial court responded to a jury inquiry by e-mail; (6) the trial court erred in calculating his offender score at sentencing; (7) the State's charging document was insufficient; and (8) his right to a jury of his peers was violated. Because his arguments are not persuasive, we affirm.

I

Bolar shot and killed Andrew Carter in a parking lot in 2018. Bolar and Carter did not know each other. Their interaction is captured on security video. The video shows Carter waiting in his car and then leaving his car, approaching Bolar's car, and speaking with him. Bolar testified at trial that Carter told him to roll down the window, which he did, and then leaned into his vehicle and said, "let's hit a cut." Bolar further testified he declined, and Carter then said, "get the fuck out of the car." The video shows that after this brief interaction, Carter walked away toward his own vehicle.

As Carter walked away, Bolar drove his vehicle forward, away from Carter. But instead of continuing to drive away from Carter, Bolar turned the vehicle around and advanced toward Carter. Carter then switched directions and began walking toward Bolar's vehicle. After Bolar pulled forward, Carter approached the driver-side window. Bolar testified he rolled down his window to tell Carter to leave him alone. He then shot Carter in the neck and chest, killing him, and sped out of the parking lot. Although Bolar did not claim at trial that he saw a gun, he testified he believed Carter would shoot him. Carter was unarmed.

Bolar was charged with murder in the second degree based on the predicate felony of assault in the second degree and unlawful possession of a firearm in the first degree. Bolar pled guilty to the firearm charge. Following a trial on the murder charge, a jury convicted Bolar of murder in the second degree. The trial court sentenced Bolar to 276 months of incarceration, which was the minimum sentence within the standard range. Bolar appeals.

II

A.     Removal of juror for cause

Bolar argues the trial court erred by granting the State's motion to strike a prospective juror for cause based on actual bias.  We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to trial by an impartial jury.  To protect this constitutional right, "the trial court will excuse a juror for cause if the juror's views would preclude or substantially hinder the juror in the performance of his or her duties in accordance with the trial court's instructions and the jurors' oath."  *State v. Lawler*, 194 Wn. App. 275, 281, 374 P.3d 278 (2016).  "The right to an impartial jury applies to both the prosecution and the defense."  *State v. Teninty*, 17 Wn. App. 2d 957, 963, 489 P.3d 679 (2021) (citing *State v. Elmore*, 155 Wn.2d 758, 773, 123 P.3d 72 (2005)).

Either party may challenge a prospective juror for cause based on actual bias.  RCW 4.44.130; .170(2).  The record establishes such bias when a juror exhibits "'a state of mind . . . in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging.'"  *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 855, 456 P.3d 869 (2020) (alteration in original) (quoting RCW 4.44.170(2)).  In deciding whether the record demonstrates such bias, we defer to the trial court.  As our Supreme Court recently explained, "Given the nuanced nature of this exercise, which relies heavily on the trial judge's assessment of the juror's responses, demeanor, and tone in context, appellate

review is appropriately restrained." *State v. Smith*, 3 Wn. 3d 718, 727, 555 P.3d 850 (2024). Thus, "We will not disturb the trial court's decision absent a clear abuse of discretion, i.e., where no reasonable judge would have made the same decision." *Id.*

While "unequivocal statements indicating bias, without a subsequent assurance of impartiality, can establish actual bias," *Id.* at 726, equivocal statements "are not sufficient to establish actual bias warranting dismissal of a potential juror," *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 808-09, 425 P.3d 807 (2018)). In *State v. Noltie*, 116 Wn.2d 831, 837, 809 P.2d 190 (1991), for example, a prospective juror was asked whether it was a possibility or a probability that "she might start out leaning in favor of the State" and she replied that it was a "possibility." The Supreme Court held that the prospective juror's responses did not show a probability of actual bias, but at most demonstrated a possibility of prejudice, and the trial court did not abuse its discretion by refusing to excuse the juror for cause. *Id.* at 838-39.

This court recently discussed and applied *Noltie* in *State v. Peña Salvador*, 17 Wn. App. 2d 769, 487 P.3d 923 (2021), *overruled on other grounds by State v. Talbott*, 200 Wn.2d 731, 521 P.3d 948 (2022). Peña Salvador was charged with child molestation and rape of a child. *Id.* at 774-75. When a prospective juror was asked if he could be impartial, he responded, "'I don't know.'" *Id.* at 774. Defense counsel then asked, "'[A]re you telling me that you think that you would be biased against my client?'" *Id.* (alteration in original). The prospective juror responded, "'I'm afraid I might be . . . and I'm just being honest with you.'" *Id*. (alteration in

- 4 -

original). When asked again if he could be fair and impartial, however, the prospective juror responded, "'I think so.'" *Id.* at 776. Defense counsel moved to excuse the prospective juror for cause, and the trial court denied the motion. *Id.* This court affirmed, holding that the prospective juror's "equivocal statements are not sufficient to establish more than a mere possibility of actual bias, and Peña Salvador has not shown that the trial court abused its discretion in denying his motion to remove the juror for cause." *Id.* at 786.

Unequivocal statements demonstrating actual bias, in contrast, require a trial court to excuse a prospective juror for cause. In *State v. Gonzales*, a prospective juror "not only admitted that she would have a 'very difficult' time disbelieving a police officer, she admitted she was not sure she could afford Gonzales the presumption of innocence if an officer testified." 111 Wn. App. 276, 282, 45 P.3d 205 (2002), *overruled on other grounds by Talbott*, 200 Wn.2d 731. Similarly, in *State v. Irby*, a prospective juror indicated that she was "'more inclined towards the prosecution'" because she had worked for Child Protective Services and when asked whether that experience would affect her ability to be fair and impartial, she responded, "'I would like to say he's guilty,'" 187 Wn. App. 183, 190, 347 P.3d 1103 (2015). In both cases, this court held that the trial court was required to excuse the prospective juror for cause. *Gonzales*, 111 Wn. App. at 282; *Irby*, 187 Wn. App. at 196.

The juror statements at issue here are unlike the equivocal statements in *Noltie* and *Peña Salvador* and like the unequivocal statements in *Gonzales* and *Irby*. Juror 26 was examined separately regarding potential bias because she had

a prior experience that was "so personal" that she could not "discuss [it] in public." When examined separately, she described a car accident three months prior to trial in which she interacted with a police officer who she stated "[did not] believe what I say," who concluded, "you have a lot of excuses, I don't think you shouldn't [sic] be driving." She added the officer "hurt[] my feelings a lot" and she was "treated unfairly. . . disrespected." Juror 26 went on to explain "now it feels like I don't trust [police officers] because all the blame is on me in my past accident."

The State then noted that different police officers were involved in the present matter, informed juror 26 "you would be required to keep an open mind and to evaluate the evidence and to give both sides a fair trial," and then asked, "[w]ill you be able to do that?" Juror 26 answered, "I'll try doing that, but . . . it still hurts my feelings . . . it's still so hard for me. It's still fresh for me." The State clarified, "the big question . . . isn't whether you'll try; it's whether you can be fair to both sides." Juror 26 responded, "[p]robably not, because, you know, it impact[s] me and my family." The State then confirmed, "I asked[,] Can you put that aside and be a fair juror to both sides in this case,' and you said 'probably not.' Am I getting that right?" Juror 26 replied, "yeah." The State asked again, "[a]nd do you still feel that way, that you do not think that you would be a fair juror for this case?" Juror 26 replied, "I don't think so."

Defense counsel then asked juror 26, "[i]t sounds like you would hold the police to a pretty high standard in this case; is that right?" Juror 26 responded, "yeah." Counsel then asked, "[i]f the officers that testify had proof as to what they were saying, would you treat their testimony different?" and the juror replied,

"Yeah. If they have proof . . . yeah." Defense counsel also asked, "So then how do we decide which officer—that the officers that take this stand, how can we be sure that you will evaluate them for their truth and not be thinking about the other incident?" Juror 26 responded, "[w]ell, like you said, if he presented . . . evidence, I will believe him, but with just words, it's just like words, probably it's like 50/50 for me."

As *Gonzales* and *Irby* confirm, such unequivocal statements—expressed in terms of probability and not possibility—require a trial court to excuse a prospective juror for cause. Like *Gonzales* and *Irby* and unlike in *Noltie* and *Peña Salvador*, juror 26 made unequivocal statements indicating she would "probably" not be fair to the State and would likely disbelieve the testimony of police officers unless they "presented evidence." In granting the State's motion to strike juror 26 for cause, the trial court explained:

> I did find that juror to be agitated and tearful. I did find that juror to say, "I don't trust them," referring to the police. She gave a particular example. She said she was speeding. She did transfer that information from a different police department to the Kent Police Department, and then she said specifically she probably could not be fair.

The record amply supports this determination, and Bolar has not established that the court, in so ruling, manifestly abused its discretion.

Citing General Rule 37, Bolar claims "[t]he court erroneously struck Juror 26 for cause based on her distrust of law enforcement." This argument is unpersuasive. "Under GR 37, a judge must deny a party's attempt to remove a juror without cause (known as a peremptory challenge) if an objective observer *could* view race or ethnicity as *a* factor in the attempted removal." *State v. Lahman*,

17 Wn. App. 2d 925, 928, 488 P.3d 881 (2021). "[E]xpressing a distrust of law enforcement or a belief that law enforcement officers engage in racial profiling" is one of seven presumptively invalid reasons to exercise a peremptory challenge under GR 37(h)(ii).

Here, in contrast to the propriety of a *peremptory challenge* addressed by GR 37 and *Lahman*, the State moved to strike juror 26 *for cause*. "Safeguarding jury impartiality means a juror suffering from actual bias may be excluded from service, *regardless of race or the reasons for the bias*." *Teninty*, 17 Wn. App. 2d at 963-64 (emphasis added). Thus, "if the party requesting a strike proves the proposed juror holds a bias that impairs the juror's ability to fairly and impartially decide the case, the strike should be sustained *regardless of the juror's race or disparate impact concerns*." *Id.* at 964 (emphasis added). As discussed above, the trial court did not abuse its discretion in concluding that juror 26's actual bias warranted her dismissal from the jury for cause. Bolar's argument based on GR 37 is thus unavailing as the rule does not apply to the trial court's ruling.

B.      Exclusion of character evidence about the victim

Bolar argues the trial court abused its discretion by excluding character evidence about Carter. Bolar also claims that even if this evidence was initially inadmissible, as the trial court ruled, the State opened the door to such evidence during trial. Both arguments are unpersuasive.

Before trial began, the State moved to exclude the following exhibits as inadmissible character evidence: (1) an email from the lead detective investigating Carter's death describing the condition of Carter's bedroom as "out of the ordinary

and it appears he may have been suffering from some sort of crisis for an undetermined amount of time"; (2) an undated, self-recorded video of Carter addressing the camera about unspecified threats; (3) a police report investigating Carter for an assault unrelated to Bolar five months before he was killed; and (4) an information and statement of probable cause document accusing Carter of robbery in 2009. The trial court granted the State's motion and excluded the evidence under ER 404 and ER 405.

Under ER 404(a)(2), "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: Evidence of a pertinent trait of character of the victim of the crime offered by an accused." Under ER 405(a), "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation." Addressing the admissibility of character evidence under ER 404 and 405, a leading Washington treatise explains, "[w]hen the defendant claims to have acted in self-defense, the victim's traits of character become more broadly admissible than they would otherwise be." 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 404.6, at 488-89 (6th ed. 2016).

Evidence of the victim's character may be admitted for two purposes. Regarding the first purpose, the Tegland treatise explains:

> [O]ne issue will be whether the defendant or the victim was the first aggressor. In this situation, Rule 404(a)(2) allows the defendant to show the victim's quarrelsome or violent disposition. The victim's character need not have been known to the defendant to be admissible on the issue of who was the first aggressor. The method of proof is normally limited to testimony regarding the victim's reputation.

*Id.* at 489. Addressing the second purpose, the treatise adds:

> On the related issue of whether the defendant had a reasonable apprehension of danger, proof is not limited to evidence of reputation. The defendant may introduce testimony regarding, for example the victim's prior use of deadly weapons the victim's quarrelsome or violent nature, including testimony regarding specific prior acts by the victim . . .
>
> In order to be admissible on the issue of reasonable apprehension, however, these traits of the victim's character must have been *known* to the defendant at all pertinent times. If the defendant knew nothing of the victim's character, the victim's character could not have contributed to the defendant's apprehension and thus would be irrelevant.

*Id.* at 489-90. "[T]he trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

There was no such abuse of discretion here. To admit the evidence at issue to show Carter was the first aggressor, such character is shown by testimony as to his reputation for a quarrelsome or violent disposition. The reputation evidence must come from the testimony of a neutral member of the community. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 405.2, at 4-5 (6th ed. 2016). A victim's reputation for violence among law enforcement officers is inadmissible because law enforcement officers are "neither neutral nor sufficiently generalized to be classified as [members of] a community" for purposes of Rule 404 and 405. *State v. Callahan*, 87 Wn. App. 925, 935, 943 P.2d 676 (1997). Bolar nevertheless sought to prove Carter's reputation with testimony from police officers, which he cannot do.

Nor was the evidence admissible to show Bolar's reasonable apprehension of Carter, as Bolar did not know anything about Carter when he shot him. Bolar testified he did not know Carter. Police officers could find no evidence Bolar and Carter knew each other. Consequently, Carter's reputation for violence was not a factor affecting Bolar's perception of imminent danger and was not admissible as evidence that Bolar's apprehension was reasonable. *Id.* at 934 (victim's reputation for violence was irrelevant because defendant was unaware of that reputation at the time of the alleged assault, citing *State v. Negrin,* 37 Wn. App. 516, 526, 681 P.2d 1287 (1984)).

Relying on *State v. Warren*, 134 Wn. App. 44, 62, 138 P.3d 1081 (2006), Bolar claims for the first time on appeal that evidence of the 2009 robbery charge and the police report of an assault investigation into Carter the year he was killed are admissible under the "res gestae exception" to ER 404(b). We reject this argument on waiver grounds because Bolar did not argue below that the res gestae doctrine applied to the trial court's determination that evidence about Carter should be admitted at trial. *See State v. Garcia*, 177 Wn. App. 769, 785-86, 313 P.3d 422 (2013) (finding waiver where defendant failed to "provide argument or legal authority supporting our review on any other ground we could address for the first time on appeal under RAP 2.5(a)"). But even if Bolar had raised this argument below, the evidence at issue would not in any event be admissible under the res gestae doctrine because it does not in any way "'complete the story of the crime by establishing the immediate time and place of its occurrence.'" *State v. Luna*, No. 103251-0, slip op. at 50 (Wash. Oct. 30, 2025)

https://www.courts.wa.gov/opinions/pdf/1032510.pdf (quoting *State v. Brown*, 132 Wn.2d 529, 570-71, 940 P.2d 546 (1997)).

Bolar's open-door argument is equally unavailing. During the trial, the State called Jay West, the lead police detective, to testify regarding whether his investigation uncovered any connection between Bolar and Carter that would explain why Bolar shot and killed Carter. West testified that he took several investigative steps "to figure out why this may have happened," including an unsuccessful social media search to find any of Carter's associates, going to Carter's residence and talking to his parents to determine, among other things, why he was in the parking lot the night he was killed, ascertaining whether Carter's sister had any information that could "shed some light on why []he may have been in the area," and reviewing Carter's iCloud and gmail accounts to find "any connection to the defendant Yourhighness Bolar." He testified he did not "find anything specifically related to this incident."

Following this testimony, defense counsel argued that West's testimony as to Carter's home and iCloud account opened the door to admitting evidence of "pee all over [his] room in great big giant bottles and writing all over the walls about rap songs and different [Bible] verses and . . . [o]n the iCloud we have a video where he's saying somebody's trying to get him through the television and basically . . . 'I'm going to get that person first.'" Counsel explained, "when we ask why [the slaying] may have happened," the door was opened because "Carter had some fixations, maybe some delusions." Bolar subsequently filed a motion reiterating these arguments. The trial court denied the motion.

- 12 -

"The open door doctrine permits trial courts to admit evidence on a subject normally barred on policy or prejudice grounds, so long as the party who otherwise stands to benefit from exclusion has increased the subject's relevance through actions at trial." *State v. Rushworth*, 12 Wn. App. 2d 466, 475, 458 P.3d 1192 (2020). A passing reference to a prohibited topic does not open the door. *State v. Avendano-Lopez*, 79 Wn. App. 706, 715, 904 P.2d 324 (1995). We review a trial court's decision under the open door doctrine for abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 750, 202 P.3d 937 (2009). A trial court abuses its discretion when "no reasonable person would have decided the issue as the trial court did." *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994).

Here, the trial court did not abuse its discretion in concluding that the State did not "open the door" to evidence of the condition of Carter's bedroom and his undated video. West's testimony focused on whether there was evidence of a nexus between Bolar and Carter. His testimony did not mention going into Carter's bedroom at all, and his reference to his search of Carter's iCloud and gmail accounts was narrowly tailored to whether he found "any connection to the defendant Yourhighness Bolar" or "specifically related to [the] incident." Contrary to Bolar's argument, this testimony did not increase the relevance of the previously excluded exhibits because it addressed a wholly separate issue. On this record, the trial court did not abuse its discretion in so ruling.

C.    Instructional errors

Bolar next asserts he is entitled to a new trial based on multiple instructional

errors. Each of his arguments is flawed.

1.    <u>WPIC 16.05</u>

To begin, Bolar argues that an instruction regarding the meaning of "necessary" was "misleading, contradicted other instructions, and shifted the burden to . . . Bolar," and therefore his conviction should be reversed. We review claimed instructional errors de novo, evaluating the instruction "in the context of the instructions as a whole." *In re Hegney*, 138 Wn. App. 511, 521, 158 P.3d 1193 (2007) (quoting *State v. Benn*, 120 Wn.2d 631, 654–55, 845 P.2d 289 (1993). "To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case." *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). The constitution requires that the jury be instructed regarding the State's burden to disprove self-defense. *Id.* (citing *State v. Acosta*, 101 Wn.2d 612, 622, 683 P.2d 1069 (1984) ("the test is whether the jury was informed, or could understand from the instructions as a whole, that the State bears the burden of proof")).

Bolar's argument implicates several instructions. First, instruction 16 provided:

> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great personal injury, although it afterwards might develop that the person was mistaken as to the extent of the danger.

> Actual danger is not *necessary* for a homicide to be justifiable.

(Emphasis added.) The instruction is consistent with 11 WASHINGTON PRACTICE:

WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.07, at 274 (5th ed. 2021) (WPIC), "Justifiable Homicide Defense of Self."  Instruction 16 is the only instruction that includes the word "necessary."

Second, instruction 18 states, "Necessary means that, under the circumstances as they reasonably appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used was reasonable to effect the lawful purpose intended."  That instruction is consistent with WPIC 16.05, "Necessary—Definition."  The instruction's note on use provides, "[u]se this instruction when the word 'necessary' is used in instructions relating to defenses in WPIC Chapters 16 and 17."

Third, instruction 19 states:

It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force.  The law does not impose a duty to retreat.

The instruction is consistent with WPIC 16.08, "No Duty to Retreat."

Lastly, consistent with WPIC 16.02(3), "Justifiable Homicide—Defense of Self and Others," instruction 15 provides:

Homicide is justifiable . . . when . . .  the slayer employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

Each of these instructions generally addresses the evidence relevant to assessing the reasonableness of force used in defense of self.

To be sure, it was not essential to instruct the jury on the meaning of "necessary" as stated in instruction 18.  But this does not mean it was error for the

trial court to provide instruction 18 because the dispositive issue on appeal is whether the instruction was incorrect or misleading when considered "in the context of the instructions as a whole." *In re Hegney*, 138 Wn. App. at 521; *see also O'Hara*, 167 Wn.2d at 105 (quoted above). Here, instructions 15, 16, 18, and 19 can be read as a whole to accurately instruct the jury that a slayer is entitled to act on appearances if they believe in good faith and on reasonable grounds that they are in actual danger of great personal injury and may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appear to the slayer. While instruction 18 also requires that there be "no reasonably effective alternative to the use of force," this same requirement is also embodied in the "reasonably prudent person," "good faith," and "all the facts and circumstances" principles. Instruction 19 similarly requires that the slayer have "reasonable grounds for believing that he is being attacked." Read as a whole, the instructions are not incorrect, misleading, or confusing.

Nor did the State impermissibly shift its burden to disprove self-defense to Bolar during its closing argument. In fact, both parties were able to—and did— effectively argue their theory of the case. The State, for its part, argued, "Actual danger is not necessary for a homicide to be justifiable," and then asked, "[s]o what is necessary?" The State then repeated the definition of necessary provided in the instructions:

> Necessary means that, under the circumstances as they reasonably
> appeared to the actor at the time, no reasonably effective alternative
> to the use of force appeared to exist—no reasonably effective
> alternative. And the amount of force used was reasonable to effect

the lawful purpose intended.

Here we know that there was reasonable alternatives. Don't turn left toward Mr. Carter. Don't roll down your window. If you're going to pull a gun out, scream, 'Hands up, I've got a gun,' because that might defuse the situation.

Defense counsel subsequently argued in relevant part:

So we talked a little bit about actual danger not necessary. Let's go to necessary real quickly.

Now, necessary means that, under the circumstances as they reasonably appeared to the actor at the time, one, no reasonably effective alternative to the use of force appeared to exist; and, two, the amount of force used was reasonable to effect the lawful purpose intended.

Now, our instructions provide definitions to help you with other instructions. The reality with the word necessary is that there's only one other instruction in which you find it outside of the definition. So we're going to go back to that one, and we're going to understand fully what this means in concert with the one place—and this is really important—one place where necessary is mentioned in all of your instructions.

. . . .

Actual danger is not necessary. Not [a]s important here. It is not necessary. You don't have to be perfect at all. You can even be wrong. That's what—this is the only place—no other place in all of those instructions actually has necessary. This word not is important.

In fact, I would venture to say that it's actually critical—critical. This whole instruction says that you can act on reasonable grounds but that actual danger is not necessary. And you can be mistaken in what you thought.

A careful review of the State's closing indicates the prosecutor said nothing that could be interpreted as improper burden-shifting. Moreover, instruction 15 specifically states:

The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State

- 17 -

has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

We assume the jury followed this instruction. *See State v. Gauthier*, 189 Wn. App. 30, 39, 354 P.3d 900 (2015). For these reasons, the trial court did not abuse its discretion (nor did it err) in providing jury instruction 18.

2.   WPIC 16.03

Bolar next argues the trial court erred by refusing his request to include an instruction for justifiable homicide in resistance to a felony, as set forth in WPIC 16.03. RCW 9A.16.050(2) provides, "Homicide is . . . justifiable when committed . . . [i]n the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is." WPIC 16.03 provides the pattern instruction for this defense. It states in relevant part:

> It is a defense to a charge of [murder] that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony [upon the slayer] [in the presence of the slayer] [or] [upon or in a dwelling or other place of abode in which the slayer is present].
>
> The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him] at the time [and prior to] the incident.

The trial court declined to include this instruction, concluding there was not an evidentiary basis for a resistance to a felony instruction.

A trial court's refusal to give an instruction to a jury, when "based on a factual dispute, is reviewable only for abuse of discretion." *State v. Walker*, 136

- 18 -

Wn.2d 767, 771-72, 966 P.2d 883 (1998). "A defendant is entitled to an instruction on justifiable homicide when he or she has raised some credible evidence, from whatever source, to establish that the killing occurred in circumstances that meet the requirements of RCW 9A.16.050." *State v. Brightman*, 155 Wn.2d 506, 520, 122 P.3d 150 (2005). "The trial court must view the evidence from the standpoint of a 'reasonably prudent person who knows all the defendant knows and sees all the defendant sees.'" *Id.* (quoting *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002)). "[I]f no credible evidence appears on the record to support a claim of justifiable homicide, then the trial court must refuse to give a justifiable homicide instruction." *Id.* The trial court must also "evaluate whether the force used by the slayer was *reasonably necessary.*" *Id*. at 521. "[A] justifiable homicide instruction based on . . . [RCW 9A.16].050(2) depends upon a showing that the use of deadly force was *necessary under the circumstances.*" *Id.* at 523. WPIC 16.03's note on use similarly states, "[t]his instruction should be given in homicide cases in which there is evidence to support a claim that the defendant was acting in resistance to the commission of a felony upon the defendant or in the defendant's presence."

Here, Bolar did not make an evidentiary showing that the use of deadly force was necessary in "actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is." RCW 9A.16.050(2). The surveillance video does not permit any such showing. To the contrary, the video shows Carter walking up to the window of Bolar's car without sudden movement. Nor is there any actual evidence of a threatened felony. This absence of evidence is similar to *Brightman*, which

- 19 -

held a justifiable homicide in resistance to a felony instruction "depends upon a showing that the use of deadly force was *necessary under the circumstances.*" 155 Wn.2d at 523. Because Bolar offers no evidence that shooting Carter was in resistance to a felony against him, the trial court correctly refused to give an instruction on justifiable homicide in resistance of a felony.

### 3. WPIC 17.02

Finally, Bolar argues for the first time on appeal that the trial court erred by not including WPIC 17.02, which is the jury instruction for lawful force in defense of self, others, or property. Bolar included WPIC 17.02 in his proposed instructions. But following argument and review of the final proposed instructions, defense counsel offered no objection to the omission of the instruction. "[F]ailure to object to an instruction waives the issue on appeal." *State v. Loos*, 14 Wn. App. 2d 748, 757, 473 P.3d 1229 (2020). Moreover, even had Bolar objected at trial, the jury received WPIC 16.02, which is to be used instead of WPIC 17.02 where "homicide is involved." Note on use, WPIC 17.02. Thus, it was not error for the trial court to decline to include this instruction.

### D. The jury's inquiry during deliberations

Bolar next asserts he is entitled to a new trial based on two errors that allegedly occurred in response to the jury's inquiry regarding the trial court's instructions. We address each in turn.

### 1. Effective assistance of counsel

Bolar argues he was denied effective assistance of counsel when his attorneys did not object to the trial court responding to a jury inquiry with "please

refer to your instructions" instead of specifically directing them to the instruction Bolar argues is most relevant. This argument is unpersuasive.

"To demonstrate ineffective assistance of counsel, a defendant must make two showings." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). First, the defendant must show that "defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances." *Id.* at 247-48. The "analysis begins with the strong presumption that counsel's performance was reasonable." *State v. Carson*, 184 Wn.2d 207, 218, 357 P.3d 1064 (2015). "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). "This presumption can be overcome if the defendant can establish that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Carson*, 184 Wn.2d at 218 (quoting *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

Second, the defendant must show that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Vazquez*, 198 Wn.2d at 248 (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). "A defendant must *affirmatively prove prejudice*, not simply show that 'the errors had some conceivable effect on the outcome.'" *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984). "Failure to establish either prong is fatal to an ineffective assistance of counsel claim." *State v. Horton*, 195

Wn. App. 202, 223, 380 P.3d 608 (2016).

Relevant here, the jury submitted an inquiry to the trial court via e-mail on the second day of deliberations. The question was, "[d]oes 'being attacked' include possible imminent attack or does it mean the attack is already in progress?" "Being attacked" is referenced in jury instruction 19, the no duty to retreat instruction. The trial court proposed responding, "Please refer to your instructions," and asked counsel whether they had any objections to the proposed response. Counsel had none, and the trial court responded to the jury inquiry accordingly. The jury asked no additional questions. Bolar argues counsel should have asked the trial court to respond by directing the jury to refer specifically to instruction 16 (defendant entitled to act on appearances) rather than to generally refer to their instructions.

Bolar cannot overcome the strong presumption that his counsel's performance was reasonable because his counsel's conduct can be characterized as legitimate trial strategy. Bolar's counsel had a legitimate strategic reason for not objecting to the trial court's proposal that it direct the jury to refer to its instructions instead of arguing the trial court should direct the jury to instruction 16 because referring to instruction 16 could have negatively highlighted an unfavorable aspect of the case: whether Bolar had "reasonable grounds [to believe] that he was in actual danger of great personal injury" when he shot Carter. Moreover, as counsel knew then, and Bolar effectively concedes now, the jury instructions in total contained the answer to the jury's inquiry. Thus, Bolar's argument fails on the deficiency prong.

In support of his argument, Bolar relies on *State v. Backemeyer*, 5 Wn. App.

2d 841, 428 P.3d 366 (2018), but his reliance is misplaced. In *Backemeyer*, the jury repeated its question about a self-defense instruction after having once already asked a question and being directed to read the court's instructions. *Id.* at 847. "Because it was clear that the jury had not read [the relevant instruction] after the court recently advised the jury to read the instructions, effective representation required defense counsel to do more than provide the same generic response that had failed to assist the jury" and Backemeyer was thus denied the effective assistance of counsel. *Id.* at 849. But here, unlike in *Backemeyer*, no specific response was required as the jury did not repeat its inquiry and directing the jury to the court's instructions was sufficient. Because Bolar fails to show that his counsel's performance was deficient, we need not address prejudice. *See Arumugam*, 30 Wn. App. 2d at 433 (quoted above).

2. <u>Right to be present</u>

Bolar also argues that his conviction should be reversed because the trial court's e-mail correspondence with counsel addressing the aforementioned jury inquiry in his absence violated his right to be present under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution. We reject this argument.

"The core of the constitutional right to be present is the right to be present when evidence is being presented." *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994) (citing *United States v. Gagnon,* 470 U.S. 522, 526, (1985)). "Beyond that, the defendant has a 'right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fulness of his

opportunity to defend against the charge . . . .'" *Id.* (quoting *Gagnon,* 470 U.S. at 526, (internal quotations omitted). "The defendant therefore does not have a right to be present during in-chambers or bench conferences between the court and counsel on legal matters, at least where those matters do not require a resolution of disputed facts." *Id.* (internal quotations omitted.). Here, as in *Lord*, discussion between the court and counsel on matters of law does not invoke the constitutional right to be present as the e-mail discussion involved no resolution of disputed facts. Bolar's argument fails on this basis alone.

Furthermore, "not every interaction between the court, counsel, and defendants will implicate the right to a public trial." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In *Sublett*, our Supreme Court concluded the public trial right does not attach to responding to a jury inquiry about instructions. *Id.* at 70-78. Proceedings about a jury question concerning the instructions are "view[ed] as similar in nature to proceedings regarding jury instructions in general. Historically, such proceedings have not necessarily been conducted in an open courtroom" and no right to be present attaches. *Id.* at 75. The interaction at issue here is a purely legal matter. Accordingly, under *Sublett* as well as *Lord*, Bolar's right to be present was not infringed.

E.    Offender score calculation

Bolar argues for the first time on appeal that the fact of whether he was on community custody at the time of his crimes must be proven beyond a reasonable doubt to a jury. This argument fails on waiver grounds, as Bolar agreed to an offender score of seven in his plea agreement for the firearm charge. Although "in

general a defendant cannot waive a challenge to a miscalculated offender score . . . [t]here are limitations on this holding." *In re Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). "[W]aiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence, [but] waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *Id.* The alleged error here involves an agreement to facts—the fact that Bolar was on community custody at the time he made the plea agreement. Accordingly, Bolar waived this argument when he failed to challenge the offender score below.

F.     Charging document validity

Bolar submitted a statement of additional grounds in which he first argues, "[t]he original charging document is insufficient" and that "[t]here [are] multiple ways to commit second degree assault by not properly giving notice of what kind of second degree assault I was not able to present a defense." SAG Add. Ground 1. His argument is not persuasive.

"We review allegations of constitutional violations—such as inadequate charging in an information—de novo." *State v. Canela*, 199 Wn.2d 321, 328, 505 P.3d 1166 (2022). Where, as here, a defendant challenges the charging documents after the conclusion of trial, there is a "presumption in favor of the validity of charging documents," *Id.* at 329, and "we construe the charging document broadly." *State v. Feeser*, 138 Wn. App. 737, 741, 158 P.3d 616 (2007). "[T]o be constitutionally adequate, a charging document must contain all essential elements of the charged crime. Essential elements are those elements of a crime

'necessary to establish the very illegality of the behavior charged.'" *Canela*, 199 Wn.2d at 328 (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). The main purpose of the essential elements rule "is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against." *Kjorsvik*, 117 Wn.2d at 101.

As stated above, Bolar was charged with murder in the second degree with second degree assault as the predicate felony. The charging document states:

Count 1 Murder In The Second Degree

That the defendant YOURHIGHNESS JERAMIAH BOLAR in King County, Washington, on or about October 28, 2018, while committing and attempting to commit the crime of Assault in the second degree, and in the course of and in furtherance of said crime and in the immediate flight therefrom, and with intent to cause the death of another person, did cause the death of Andrew S Carter, a human being, who was not a participant in said crime, and who died on or about October 28, 2018;

Contrary to RCW 9A.32.050(1)(a), (b), and against the peace and dignity of the State of Washington.

Thus, the State had the burden to prove that Bolar is "guilty of murder in the second degree when: (a) With intent to cause the death of another person but without premeditation, he . . . causes the death of such person . . . ; or (b) He . . . commits or attempts to commit any felony, including assault . . . and, in the course of an in furtherance of such crime or in immediate flight therefrom, he . . . , or another participant, causes the death of a person other than one of the participants." RCW 9A.32.050(1)(a)-(b).

Importantly, while the predicate felony is an element of the felony murder charge, the defendant is not charged with the underlying crime. *State v. Kosewicz*,

174 Wn.2d 683, 691-92, 278 P.3d 184 (2012). "The predicate felony merely substitutes for the mental state the State is otherwise required to prove." *Id.* at 692 (citing *State v. Craig*, 82 Wn.2d 777, 781, 514 P.2d 151 (1973)). "Therefore, Washington courts have long held that the underlying elements of the predicate felony are not essential elements of felony murder and do not have to be included in the information." *Id.* (citing *State v. Hartz*, 65 Wn. App. 351, 354, 828 P.2d 618 (1992); *State v. Anderson*, 10 Wn.2d 167, 180, 116 P.2d 346 (1941); *State v. Ryan*, 192 Wash. 160, 164-65, 73 P.2d 735 (1937); *State v. Fillpot*, 51 Wash. 223, 228, 98 P. 659 (1908)).

Bolar cites *State v. Norris*, 108 Wn. App. 1011 (2001), in support of his argument, but *Norris* is inapposite. Norris' conviction of second degree assault was overturned because the State's information was insufficient. But unlike Bolar, who was charged with murder in the second degree based on the predicate felony of assault in the second degree, the defendant in *Norris* was charged with second degree assault. As stated above, the State must include the essential elements of the crime charged, but is not required to include the elements of the predicate offense. Thus, the charging requirements here differ markedly from those in *Norris*. Because the charging document gave Bolar notice of the elements of murder in the second degree, it was constitutionally adequate.

G.    <u>Right to a jury of his peers</u>

Finally, Bolar, who is Black, asserts in his statement of additional grounds:

> Out of 150 people only 2 Black people were called in for duty as potential jurors, Neither of those 2 were able to be on my jury, also most of my jury were not from King county; I did not have a jury of my "peers." There was no color on my jury.

- 27 -

We again find no error.

"A criminal defendant has no constitutional right to a jury comprised in whole, or in part, of persons of his or her own race." *State v. Barajas*, 143 Wn. App. 24, 34, 177 P.3d 106 (2007) (citing *Batson v. Kentucky,* 476 U.S. 79, 85 (1986)). But the right to a fair trial "includes an impartial jury drawn from a fair cross section of the community." *State v. Wade*, 28 Wn. App. 2d 100, 116, 534 P.3d 1221 (2023) (citing *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 19, 296 P.3d 872 (2013)). "The venire, the pool, jury wheel, or panel from which a jury is drawn must not systematically exclude distinctive groups in the community." *Id.* at 117 (citing *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979)). "A challenger has the burden to establish a prima facie violation of the right to a jury drawn from a fair cross section of the community." *Id*.

Washington applies the *Duren* test in considering claims of underrepresentation on juries. *State v. Rivers*, 1 Wn.3d 834, 850-51, 533 P.3d 410 (2023). Under that test, a prima facie violation requires proof of three elements: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Yates*, 177 Wn.2d at 19 (applying *Duren*, 439 U.S. at 364, 366).

Bolar has not established the elements of the prima facie case. His argument does not refer to the exclusion of a distinctive group, nor does he argue

the jury selected is not reasonable in relation to the number of such persons in the community, or that this underrepresentation is due to systemic exclusion of the group in the jury-selection process. Moreover, a careful review of the record provides no tenable basis for Bolar's argument. The record below suggests that jurors 108, 115, and 120 were Black. Juror 108 was excused for failure to appear for a second day of jury duty, juror 115 was excused due to financial hardship, and juror 120 was not excused at all. Bolar thus cannot establish a prima facie case that distinctive groups were excluded from the jury, and a careful review of the record suggests no such impermissible conduct.

Lastly, Bolar asserts the jurors empaneled in his trial were not from King County. Article I, section 22 of the Washington State Constitution includes the right to "an impartial jury of the county in which the offense is charged to have been committed." *City of Tukwila v. Garrett*, 165 Wn.2d 152, 155, 196 P.3d 681 (2008) ("The purpose of [this right] is to guarantee a fair and random selection of jurors from the county in which a crime is alleged to have been committed."). But no evidence in the record indicates that the jurors originated from outside of King County. Bolar's argument thus fails.

_____
Feldman, J.

WE CONCUR:

_____          _____
                                    Fearing, J.

- 29 -